**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANELL MOORE, on Behalf of Herself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br> vs.<br><br>ANGIE'S LIST, INC.,<br><br>        Defendant. | CIVIL ACTION NO:_____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Janell Moore, by and through undersigned counsel, on behalf of herself and all persons similarly situated, complains and alleges as follows:

## NATURE OF THE CASE

1. This is a civil action seeking monetary damages, restitution, injunctive relief, and declaratory relief from Defendant, Angie's List, Inc. ("Angie's List"), arising from Angie's List fraudulent, deceptive, and misleading practice of luring consumers to pay for access to purportedly unfiltered reviews, ratings, and search result rankings by consumers of local service providers. In reality, Angie's List secretly manipulates reviews, ratings, and search results for the company's own economic gain.

2. Angie's List operates a paid-membership review service that allows consumers to share reviews and ratings of local service providers, such as contractors, dentists, and mechanics. Paying members can search reviews and ratings via the Angie's List website, www.angieslist.com.

3.      According to Angie's List, a service provider's position in a member's search results "is determined by their recent grades and number of reviews.  Companies with the best ratings from members will appear first."[1]

4.      Angie's List falsely assures consumers that "service providers cannot influence their ratings on Angie's List,"[2] "[b]usinesses don't pay,"[3] and "[c]ompanies can't pay to be on Angie's List."[4]  Instead, Angie's List continuously emphasizes its unique "consumer-first philosophy," which manifests in the company's "unwavering commitment to placing the interests of the consumer first[.]"[5]  By "always placing the interests of the consumer first," Angie's List "help[s] [its] members find the best provider for their local service needs."[6]

5.      These and similar statements dupe potential and existing members into believing that Angie's List reviews, ratings, and search results are valuable and trustworthy because they reflect unfiltered feedback of consumers, for consumers.  Angie's List's standardized form membership agreement (the "Membership Agreement," Ex. A hereto) even declares that the company "simply acts a passive conduit" for reviews and ratings "based upon actual first-hand experiences other users have had[,]" and that Angie's List "does not endorse" any service

---

[1] *See* Angie's List FAQ, "Understanding and sorting search results," *at* http://support.angieslist.com/app/answers/detail/a_id/54/~/understanding-and-sorting-search-results (updated Feb. 1, 2015) (last accessed Feb. 25, 2015) (Ex. B hereto).
[2] *See* Angie's List 2013 Form 10-K at 2, *available at* http://www.sec.gov/Archives/edgar/data/1491778/000119312513074229/d488609d10k.htm (excerpt attached as Ex. C hereto).
[3] *See, e.g.*, http://www.angieslist.com/how-it-works.htm (Sep. 11, 2013) (Ex. D hereto); http://www.angieslist.com/howitworks.aspx (Apr. 1, 2011) (Ex. E hereto).
[4] *See, e.g.*, http://www.angieslist.com (Dec. 17, 2013) (Ex. F hereto).
[5] *See, e.g.*, Angie's List Amend. No. 4 to Form S-1 (Nov. 2, 2011) at 2, *available at* http://www.sec.gov/Archives/edgar/data/1491778/000119312511292292/d222159ds1a.htm (excerpt attached as Ex. G hereto).
[6] *See, e.g.*, Angie's List 2013 Form 10-K at 1, *available at* http://www.sec.gov/Archives/edgar/data/1491778/000119312513074229/d488609d10k.htm (excerpt attached as Ex. C hereto).

providers.[7]  But this is not the case.

6.      Angie's List wrongfully conceals from consumers that service providers **can and do pay** to influence "the List" in at least three significant ways, in exchange for paying substantial "advertising" fees:

### Artificially Higher Rankings in Search Results

7.      For a price, service providers can pay to appear higher up in members' search results.  Take, for instance, an Angie's List member who wants to find a plumber.  The member can search the Angie's List website for nearby plumbers.  Her search should pull-up results for all nearby plumbers and feature all member reviews for those plumbers, whether good or bad, as well as each plumber's rating (i.e., a letter grade of "A" through "F").  Importantly, the search results should rank plumbers based on the stated objective criteria, such as from highest to lowest ratings, those with the best or most positive reviews, or some combination of both.  At the very least, the search results should rank plumbers in some other objective order, such as geographic proximity.

8.      None of this is how it actually works.  Angie's List secretly alters the order in which service providers are listed in members' search results.  Angie's List ranks service providers higher based on how much providers pay in "advertising" fees.  In the above example, a plumber with an "A" rating and all positive reviews, but who did not pay any "advertising" fees," will be ranked below a plumber who did pay "advertising" fees but has worse reviews or ratings.  This is not disclosed to consumers.

9.      One investigation report found that **the best reviewed heating and air company in their area was ranked below eleven others that had inferior ratings** or just a handful of

---

[7] *See* Membership Agreement (Ex. A hereto), at 9.

reviews.[8]   The best-reviewed service provider stated that Angie's List requested $12,000 to $15,000 to appear at the top of the list.[9]   Another service provider, who was stuck on the eighth page of results, was allegedly quoted $50,000 by Angie's List to be ranked higher in search results.[10]   As another investigation report noted: "If you're looking for contractor, you're only going to look at the first page or two.  That skews the ratings . . . . It's about who advertises. I don't think they're being straight with the public on that."[11]   Angie's List's manipulation is even worse when a member telephones the Angie's List call center for service provider recommendations.  For a fee, service providers will "[b]e one of only four companies provided when a member calls looking for a highly-rated providers,"[12] regardless of a provider's reviews or rating.

10.     Plaintiff's own experience mirrors these reports.  For instance, she learned that one of her local service providers pays to be "at the top of the list" in search results on www.angieslist.com.

**Suppression of Negative Reviews**

11.     For a price, Angie's List will suppress negative reviews of service providers so those reviews do not appear in a member's search results.  In addition, Angie's List will remove negative reviews through its internal "Complaint Resolution Process."

---

[8] "Ain't It Time To Say Goodbye to Angie's List?," Forbes (Oct. 9, 2013).
[9] *Id.*
[10] *Id.*
[11] "The Boss Responds: A Call to Angie's List Is Answered by Angie Herself," Santa Barbara Independent (July 19, 2014).
[12] Angie's List Marketing Guide, at 6, *available at*
http://content.angieslist.com/company/images/sp/almarketingguide.pdf (last accessed Feb. 25, 2015) (Ex. H hereto).

12.     Plaintiff encountered this when she hired a service provider (different from the one noted above) identified on www.angieslist.com.  The provider took Plaintiff's money and never finished the job.  Only after Plaintiff wrote and posted her own negative review and talked to Angie's List was she able to see other negative reviews of the same service provider that predated her original search.

13.     Because of these deceptive acts, members do not know, or cannot reasonably discover, how many negative reviews other members have previously submitted about a service provider, or what those reviews said.

**Threatened Suppression of Positive Reviews**

14.     On information and belief, Angie's List extorts "advertising" fees from service providers by threatening to suppress positive reviews unless a service provider pays up.  This distorts the integrity of search results because a consumer can never be sure whether her search has located the service providers with the most positive reviews or not.

**Angie's List's Fraudulent and Deceptive Practices Harm Consumers**

15.     Angie's List does not deliver on its value proposition.  Angie's List falsely promises that paid membership will grant unfiltered access to 100% consumer-driven reviews and ratings of service providers, and that search result rankings will be based on those reviews and ratings.

16.     By wrongfully manipulating consumer-generated reviews and ratings, as well as search result rankings, Angie's List deceives, defrauds, and misleads its existing and potential member base.  These wrongful acts also violate the principles set forth in the FTC guidelines on advertising and endorsements.  *See* 16 C.F.R. Part 255.  At bottom, Angie's List does not help members find the "best" service provider, but rather the one who paid the most money to Angie's List.  This certainly is not "always placing the interests of the consumer first."

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Angie's List.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Angie's List is subject to personal jurisdiction here and regularly conducts business in the Eastern District of Pennsylvania, Plaintiff resides in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## THE PARTIES

19.     Plaintiff, Janell Moore, is a citizen of the Commonwealth of Pennsylvania.  She has been a paying member of Angie's List since 2012.

20.     Defendant Angie's List is a Delaware corporation with its principal place of business at 1030 E. Washington Street, Indianapolis, Indiana.  Angie's List is licensed to do business in Pennsylvania (among other states) and has specific, as well as general and systematic, contacts in Pennsylvania.

21.     Angie's List operates a paid-membership review service that allows consumers to share reviews and ratings of local service providers.  It provides this service for approximately 253 local markets in the United States principally through its website, www.angieslist.com.

22.     At its inception in 1995, Angie's List collected and shared reviews and ratings of service providers via telephone or even door-to-door.  Angie's List has since become one of the leading, if not largest, paid-membership service of its kind.  The overwhelming majority of reviews and ratings today are submitted and accessible via the company's website,

- 6 -

www.angieslist.com.

23.     Angie's List's currently boasts a membership of over **three million paying members.**   Angie's List held an initial public offering in November 2011.   The company has since grown year after year.   Angie's List reported **$315 million in revenue for fiscal year 2014**, **up nearly 30%** compared to fiscal year 2013.   The company reported $245.6 million in revenue for fiscal year 2013, **up 58%** compared to fiscal year 2012.

## COMMON FACTUAL ALLEGATIONS

A.     <u>Angie's List's Relationship With Its Members</u>

24.     Angie's List requires all members to agree to the Membership Agreement, a standardized form contract drafted by Angie's List.

25.     Angie's List does not discuss or negotiate the terms of the Membership Agreement with consumers.   It simply references the Membership Agreement when a consumer signs up to join.

26.     The Membership Agreement describes the company's service as follows:

> **1. ANGIE' LIST SERVICE**
> Angie' List provides reviews and ratings on a variety of Service Providers based upon the actual first-hand experiences other users have had with these Service Providers and also provides You with the opportunity to provide Your own reviews and ratings on the Service Providers You use.[13]

27.     Angie's List expressly disclaims any manipulation or control of consumer-generated reviews and ratings.   The Membership Agreement states in pertinent that:

> **13. PUBLICATION AND DISTRIBUTION OF CONTENT**
> Angie' List does not guarantee the accuracy, integrity, quality or appropriateness of any Content transmitted to or through the Service. You acknowledge that **Angie' List simply acts as a passive conduit** and an interactive computer service provider for the publication and distribution of Content . . . .

---

[13] *See* Membership Agreement, at 2 (Ex. A hereto).

. . .

**14. SERVICE PROVIDERS**
Angie' List does not endorse and is not responsible or liable for any Content, Service Provider Content, data, advertising, products, goods or services available or unavailable from, or through, any Service Providers . . . [14]

28.    As alleged more fully below, Angie's List does not "simply act[] as a passive conduit" for sharing reviews, ratings, and search result rankings based solely on "actual first-hand experiences of other users."  The company does not disclose that its manipulates reviews, ratings, and search results, all of which also constitute forms of endorsement.  *See, e.g.*, *See* 16 C.F.R. Part 255; ".com Disclosures:  How to Make Effective Disclosures in Digital Advertising," FTC (Mar. 2013), *available at* https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf (last accessed Mar. 11, 2015).  Angie's List's secret, pervasive, and self-serving actions violate consumer expectations, the company's advertisements and other public statements and representations, and the Membership Agreement.

**B.    How Angie's List Reviews, Ratings and Searches Are *Supposed* to Work**

29.    Principally through www.angieslist.com, Angie's List ostensibly aids consumers who research, hire, rate, and review local service providers for home, healthcare, and automotive service needs.  The company currently features reviews and ratings for service providers in approximately 550 categories.

30.    The value proposition of Angie's List is that the company's service enables a consumer to choose a local service provider based on other consumers' experiences.  Consumers pay for this service because they see value in having access to the honest, unfiltered feedback of real people.  With competing services, anyone can post anonymous reviews, including people

---

[14] *Id.* at 8-9 (emphasis added).

who never hired the service providers in question, or even the service providers themselves.  For instance, Yelp! (at www.yelp.com) does not charge membership fees, but does not prohibit anonymous posts.  Angie's List distinguishes itself in the market – and justifies its membership fees – by claiming that reviews, ratings, and search results available through Angie's List are superior to those of competitors because the service provided by Angie's List is a more reliable, completely "consumer driven" service.

      31.    A "review" on Angie's List is narrative description of a consumer's experience with a given service provider.  Reviews can be positive or negative.  "Ratings" on Angie's List are letter grades ranging from "A" to "F," with "A" being the best and "F" being the worst.  Six criteria are rated:   overall experience, price, quality, responsiveness, punctuality, and professionalism.  Ratings on each criterion are averaged and totaled across all member reviews submitted for the service provider.  This yields the service provider's overall letter grade or rating.

      32.    Through www.angieslist.com, members can search for the "best service provider."  Angie's List members justifiably and reasonably expect that search results will identify the "best" provider, as advertised, based on the member's search inputs.  This might include, for instance, sorting providers based on reviews, ratings, a combination of both, or some other objective metric such as geographic proximity.  The Angie's List FAQ affirms this:

> 1.    How are companies sorted in search results?
> A provider's position in your search results is determined by their recent grades and number of reviews. Companies with the best ratings from members will appear first. To help prevent the same providers from always showing up first, companies who have earned similar grades are rotated within your results.[15]

---

[15] *See* Angie's List FAQ, "Understanding and sorting search results," *at* http://support.angieslist.com/app/answers/detail/a_id/54/~/understanding-and-sorting-search-results (updated Feb. 1, 2015) (last accessed Feb. 25, 2015) (Ex. B hereto).

33.     Elsewhere in its FAQ, Angie's List reiterates:  "Companies with a poor rating from our members will appear lower down on the List after businesses who have earned good ratings for superior work."[16]

34.     The represented "consumer-driven" nature of the company's service is a substantial, material factor that reasonably induces consumers to become and remain paying members of Angie's List.

**C.     How Angie's List Reviews, Ratings, and Searches *Really* Work**

35.     Paying consumers are not getting "the List" they are promised.  Contrary to consumer expectations and Angie's List's representations, Angie's List does not provide an unfiltered, consumer-driven service.  Nor does Angie's List rank search results based exclusively on consumer-generated reviews and ratings.

36.     Angie's List manipulates service providers' reviews, ratings, and search result rankings based on service providers' payments of "advertising" fees.  On information and belief, these fees can be tens of thousands of dollars per provider.

37.     Angie's List does not disclose that service providers pay (i) to improve their placement in search results regardless of reviews and ratings, (ii) to suppress negative reviews, and (iii) to ensure publication of positive reviews.

**1.     Manipulation of Search Results**

38.     Angie's List does not sort search results based on service providers' reviews and ratings, as represented.

---

[16] *See* Angie's List FAQ, "Negative reviews on the List," *at* http://support.angieslist.com/app/answers/detail/a_id/21/~/negative-reviews-on-the-list (updated Jan. 13, 2014) (last accessed Feb. 25, 2015) (Ex. I hereto).

39.     Instead, Angie's List ranks service providers higher up in search results depending on whether a service provider pays money to Angie's List.  This is not disclosed to consumers.

40.     Search result rankings are important because consumers reasonably assume that providers ranked at the top of the list are the "best" or highest recommended (in the case of Angie's List, highest recommended by other consumers).  Consumers rarely search past the first couple of pages of search results.

41.     The practical effect is that consumers are duped into choosing service providers ranked highly in search results, even if those providers do not have superior ratings or reviews.

### 2.     Suppression of Negative Reviews

42.     For a price, Angie's List will suppress negative reviews of service providers.  This may take the form of the company's not counting negative reviews when compiling a service provider's rating or search result ranking behind the interface that consumers see, or not making negative reviews readable.

43.     Angie's List falsely assures consumers that:  "We accept both good and bad reviews and we never remove reviews unless the member who posted the feedback contacts us to delete it."[17]  Whether or not Angie's List technically "removes" reviews, the company does not tell consumers that it alters the visibility of reviews, or rigs search results, for money.  Indeed, upon information and belief, Angie's List threatens service providers that it will "never remove" negative reviews to extract "advertising" fees from those providers to suppress the reviews or to be ranked higher in search results – which essentially has the same practical effect as deleting reviews.

---

[17] *See* Angie's List FAQ, "Negative reviews on the List," *at* http://support.angieslist.com/app/answers/detail/a_id/21/~/negative-reviews-on-the-list (updated Jan. 13, 2014) (last accessed Feb. 25, 2015) (Ex. I hereto).

### 3. Threatened Suppression of Positive Reviews

44. On information and belief, Angie's List also extracts "advertising fees" from service providers to ensure that positive reviews are highly visible and factored into a service provider's rating and search result ranking.

45. Again, search result rankings are important because consumers reasonably assume that providers ranked at the top of the list are the "best" or highest recommended (in the case of Angie's List, highest recommended by other consumers). If a service provider's positive reviews are not accurately accounted for, then the provider's search result ranking (and corresponding visibility and chance of being selected by a consumer) is reduced.

### D. Plaintiff's Experience with Angie's List is Emblematic of That of the Classes

46. Plaintiff first paid to join Angie's List in 2012. She renewed her membership in 2013 and 2014, and currently is a member.

47. In the Fall of 2014, Plaintiff hired a contractor she identified through the Angie's List service to remodel her kitchen. At the time of her search, there were no visible reviews about the contractor on www.angieslist.com. Unfortunately, the contractor did not finish the agreed-upon work and refused to return the $4,000 Plaintiff had paid to him.

48. Shortly thereafter, Plaintiff submitted a negative review of the contractor to Angie's List. After doing so, Plaintiff was able to see, for the first time, a number of other negative reviews of the contractor written earlier by other members prior to Plaintiff's hiring the same contractor. That is, up until Plaintiff submitted her own negative review, she was never aware that other members had written negative reviews about the same contractor. One newly-revealed negative review complained about the same exact issue that Plaintiff experienced with the contractor. Plaintiff would not have hired the contractor had she seen these negative reviews earlier.

49.     When Plaintiff confronted Angie's List about this, an Angie's List representative did not characterize the suppression of negative reviews as an oversight or a technological error. In fact, upon information and belief, it was because the service provider paid money to Angie's List.

50.     Had Plaintiff seen the previously written negative reviews, she would not have hired the contractor.  After all, Plaintiff was paying for access to other consumers' reviews.  At a minimum, Plaintiff had a reasonable expectation she would have access to all reviews for a given service provider.

51.     Meanwhile, Plaintiff discussed her ordeal with a different contractor, an electrician, whom she knew.  The electrician told Plaintiff that he pays "to be at the top" of search results on www.angieslist.com.  Until this conversation, Plaintiff did not know, and had no reasonable way of knowing, that – contrary to Angie's List's advertising and other representations – service providers can and do pay to manipulate search results on www.angieslist.com.

## 2.     Angie's List Greatly Benefits From Its Wrongful Conduct

52.     Due to its fraudulent, deceptive, and unfair conduct, Angie's List has made millions of dollars off of unsuspecting consumers.  Misled by Angie's List's false assurances, consumers have no reasonable basis to believe, or reasonable means to discover, that service providers pay to improve their ranking on members' search results, to suppress negative reviews, or to ensure that positive reviews are not suppressed.  Consumers are paying for something – unfiltered, consumer-driven reviews, ratings, and search results – that they do not receive.

53.     Angie' List has reaped significant financial benefits from its scheme.  In fact, Angie's List derives majority of its revenue from service providers.  In 2011, 2012, 2013, and 2014, Angie' List derived 62%, 69%, 73%, and 76.8% of its total revenue, respectively, from

service providers.  Stated otherwise, in 2014, Angie's List **made approximately $241.9 million from service providers**, or **more than three times** the money it made in consumers' membership fees.  Simply put, despite its "consumers first" credo, Angie's List's economic fortunes are more aligned with service providers than consumers.  The following chart illustrates the point:[18]



54.     Angie's List is not "simply acting as a passive conduit" for unfiltered exchange of consumer-created content, as the Membership Agreement states.  Angie's List aggressively pursues service providers to pay thousands of dollars in "advertising" fees to improve providers' reviews, ratings, and search result rankings.  Angie's List tells services providers that "advertising" fees will help to give a business "an advantage of increased exposure" that "can propel you ahead of your competition."[19]  Angie's List does not disclose this to consumers,

---

[18] Sources: Angie's List 2013 Form 10-K at 3, *available at* http://www.sec.gov/Archives/edgar/data/1491778/000119312513074229/d488609d10k.htm (excerpt attached as Ex. C hereto); Angie's List Fourth Quarter Results and Full Year 2014 Results, *available at* http://investor.angieslist.com/releasedetail.cfm?ReleaseID=896836 (Ex. J hereto).

[19] Angie's List Marketing Guide, at 8, *available at* http://content.angieslist.com/company/images/sp/almarketingguide.pdf (last accessed Feb. 25, 2015) (Ex. H hereto).

including its members.

55.     Angie's List does disclose to consumers that service providers with an "A" or "B" rating may offer "discounts" or "coupons" to members.  But a discount or coupon is not the same as taking money to rank one service provider over another in search results (especially if the latter has better reviews or ratings); to remove a service provider's negative reviews for a price; or to suppress positive reviews unless a service provider pays an extorted "advertising" fee. Angie's List does not disclose to potential and existing members any of these extortive fees and practices.

## CLASS ALLEGATIONS

56.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

57.     The proposed classes are defined as:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action through class certification, were paying members of Angie's List (the "National Class"); and

> All persons in the Commonwealth of Pennsylvania who, within the applicable statute of limitations preceding the filing of this action through class certification, were paying members of Angie's List (the "Pennsylvania State Subclass") (for purposes of the claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*, *see* Fourth Claim for Relief, *infra*).

The National Class and the Pennsylvania State Subclass are collectively referred to as the "Classes."

- 15 -

58.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

59.     Excluded from the Classes are Angie's List, its parents, subsidiaries, affiliates, officers and directors, any entity in which Angie's List has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

60.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of many thousands of members, the identities of whom are within the knowledge of and can be ascertained only by resort to Angie's List's records.

61.     The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, paid to become a member of Angie's List.  The representative Plaintiff, like all Class members, has been damaged by Angie's List's misconduct in that they have been harmed by subscribing to a service based on the same deceptive, misleading, and/or fraudulent pretenses and practices, and have been subject to the same or substantively identical Membership Agreement, which is a contract of adhesion. Furthermore, the factual basis of Angie's List's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

62.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

63.     Among the questions of law and fact common to the Classes are whether Angie's List:

a.     Breached the terms of the Membership Agreement, and/or the covenant of good faith and fair dealing with Plaintiff and other members of the National Class, through the

company's manipulation of reviews, ratings, and search results;

      b.    Misrepresented or concealed that the company manipulated reviews, ratings, and search results;

      c.    Unlawfully, falsely, deceptively, or misleadingly represented that the company does not accept money from service providers in connection with reviews, ratings, and search results;

      d.    Unlawfully, falsely, deceptively, or misleadingly induced Class members to pay for membership based on misrepresentations and false promises;

      e.    To the extent applicable, whether and how long Angie's List fraudulently concealed its past and ongoing wrongful conduct from Plaintiff and other members of the Classes;

      f.    Was unjustly enriched through the company's manipulation of reviews, ratings, and search results; and

      g.    Violated consumer protection laws.

64.    Other questions of law and fact common to the Classes include:

      a.    The proper method or methods by which to measure damages; and

      b.    The declaratory and injunctive relief to which the Classes are entitled.

65.    Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful conduct and the same or substantially similar unconscionable provisions of the Angie's List Membership Agreement and/or other related documents.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

66.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Angie's List, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Angie's List's misconduct will proceed without remedy.

68.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of the National Class)**

69.     Plaintiff repeat paragraphs 1 through 68 above.

70.     Angie's List provides a service to members pursuant to a standard form Membership Agreement, which is a contract of adhesion.

71.     The Membership Agreement did not vary, or did not substantially vary in pertinent material respects, during the Class Period.

72.     The Membership Agreement mandates, inter alia, that Angie's List:

a.      Acts as a "passive conduit";

b.      Provides "first-hand," consumer-generated reviews and ratings of service providers; and

c.      Does "not endorse" service providers.

73.     In the accompanying official FAQ, Angie's List further represents, inter alia, that:

a.      "A provider's position in your search results is determined by their recent grades and number of reviews";

b.      "Companies with the best ratings from members will appear first"; and

c.      "Companies with a poor rating from our members will appear lower down on the List after businesses who have earned good ratings for superior work."

74.     Angie's List materially breached the Membership Agreement and related representations, including the examples identified immediately above, by manipulating reviews, ratings, and search results of service providers.

75.     Plaintiff and the National Class have performed all, or substantially all, of their obligations under the Membership Agreement.

76.     Plaintiff and the National Class are entitled to recover all damages proximately caused by Angie's List's breach, including compensatory, incidental, and consequential damages, and pre- and post-judgment interest.  Damages may be quantified on a classwide basis. Also, or in the alternative, Plaintiff and the National Class are entitled to declaratory and injunctive relief in the form of a declaration that Angie's List is in breach of the Membership Agreement, that Angie's List be enjoined from continuing its unlawful actions as alleged herein

in violation of the Membership Agreement.  Also, or in the alternative, Plaintiff and the National Class are entitled to restitution, disgorgement, rescission, and similar equitable relief.   Any provisions in the Membership Agreement to the contrary are unconscionable, severable, and/or void.

77.     By common law or statute, the Membership Agreement imposes upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

78.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

79.     Angie's List has breached not only the Membership Agreement but the covenant of good faith and fair dealing in the Membership Agreement through its wrongful actions alleged herein.

80.     Plaintiff and the National Class have sustained damages as a result of Angie's List's breach of the Membership Agreement and the covenant of good faith and fair dealing under the Membership Agreement.

## SECOND CLAIM FOR RELIEF
## Fraud and Fraudulent Inducement
### (On Behalf of the National Class)

81.     Plaintiff repeats paragraphs 1 through 80 above.

82.     Angie's List affirmatively misrepresented and/or did not disclose sufficient facts to render non-misleading its statements about, inter alia:

   a.      Whether the company "endorse[s]" service providers;

   b.      Whether service providers pay Angie's List to manipulate consumer reviews, ratings, and search results; and

   c.      Whether the company acts as a "passive conduit."

83.     Angie's List knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading.  Angie's List also knew, or had reason to know, that its misrepresentations and omissions would induce Class members to pay to join Angie's List.

84.     Angie's List's misrepresentations or omissions were material and a substantial factor in Plaintiff and Class members' paying to become members of Angie's List.

85.     Angie's List intended its misrepresentations or omissions to induce Plaintiff and Class members to pay to become (or to remain) members of Angie's List, or had reckless disregard for same.

86.     But for these misrepresentations (or omissions), Plaintiff and Class members would not have joined and/or paid for, or paid as much for joining, Angie's List.

87.     Plaintiff and Class members were justified in relying on Angie's List's misrepresentations.  The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class member, including through a standardized purchasing process.

88.     Plaintiff and Class members were damaged by reason of Angie's List's misrepresentations or omissions alleged herein.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the National Class)**

89.     Plaintiff repeats paragraphs 1 through 88 above.

90.     By means of Angie' List's wrongful conduct alleged herein, Angie's List knowingly provided services to Plaintiff and members of the National Class under unfair, deceptive, unconscionable, and/or oppressive circumstances.

91.     Angie's List knowingly received and retained wrongful benefits from Plaintiff and members of the National Class.   In so doing, Angie's List acted intentionally or with conscious disregard for the rights of Plaintiff and members of the National Class.

92.     As a result of Angie's List's wrongful conduct as alleged herein, Angie's List has been unjustly enriched at the expense, and to the detriment, of Plaintiff and members of the National Class.

93.     Angie's List's unjust enrichment is traceable to, and resulted directly and proximately from, the wrongful conduct alleged herein.

94.     It is unfair and inequitable for Angie's List to be permitted to retain the benefits it received, and is still receiving, without justification, from the wrongful conduct alleged herein. Angie's List's retention of such benefits under the circumstances is inequitable.

95.     The financial benefits derived by Angie's List rightfully belong to Plaintiff and members of the National Class, in whole or in part.   Angie's List should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the National Class all wrongful or inequitable proceeds received from them.   A constructive trust should be imposed upon all wrongful or inequitable sums received by Angie's List traceable to Plaintiff and the

members of the National Class.

96.     Plaintiff and members of the National Class have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Pennsylvania's Unfair Trade Practices and Consumer Protection Law**
**(On Behalf of the Pennsylvania State Subclass)**

97.     Plaintiff repeat paragraphs 1 through 96 above.

98.     This claim is asserted on behalf of the members of the Pennsylvania State Subclass under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*

99.     The UTPCPL, 73 P.S. § 201-3 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

100.    Angie's List has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce by:

        a.      "Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services," *see* 73 P.S. § 201-2(4)(ii);

        b.      "Using deceptive representations . . . in connection with goods or services," *see* 73 P.S. § 201-2(4)(iv);

        c.      "Representing that goods or services have sponsorship [or] approval . . . that they do not have . . . .," *see* 73 P.S. § 201-2(4)(v);

        d.      "Advertising goods or services with intent not to sell them as advertised," *see* 73 P.S. § 201-2(4)(ix);

        e.      "Failing to comply with the terms of any written guarantee . . . ," *see* 73 P.S. § 201-2(4)(xiv); and

        f.      "Engaging in any other fraudulent or deceptive conduct which creates a likelihood or confusion or of misunderstanding," *see* 73 P.S. § 201-2(4)(xxi).

- 23 -

101.    Angie's List violated the above sections by engaging in the conduct alleged herein.

102.    Pursuant to 73 P.S. § 201-9.2, *et seq.*, Plaintiff and members of the Pennsylvania State Subclass purchased services, in the form of, inter alia, membership access to reviews, ratings, and search results from Angie's List that were used primarily for personal, family or household purposes.

103.    Angie's List engaged in unlawful conduct, made affirmative misrepresentations or omissions, or otherwise violated the UTPCPL by, inter alia, knowingly, intentionally, and recklessly misleading consumers about Angie's List's manipulation of reviews, ratings, and search results, which also violates the Membership Agreement.

104.    To the extent applicable, Angie's List intended that Plaintiff and Pennsylvania State Subclass members would rely on the company's misrepresentations, or acts of concealment and omissions, including those in connection with the Membership Agreement.  Further, to the extent applicable, reliance can be presumed under the circumstances.

105.    Angie's List's conduct caused Plaintiff and Pennsylvania State Subclass members to suffer ascertainable losses in the form of membership fees paid in amounts that would otherwise not have been incurred in whole or in part.

106.    A causal relationship exists between Angie's List's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Pennsylvania State Subclass.

107.    As redress for Angie's List's repeated and ongoing violations of the UTPCPL, Plaintiff and the Pennsylvania State Subclass are entitled to, inter alia, damages and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.      Declaring that Angie's List breached its Membership Agreement with Plaintiff and the National Class members;

2.      Declaring that the Membership Agreement is void, severable, and/or unconscionable to the extent necessary to remedy Angie's List's past and continuing wrongful conduct;

3.      Declaring Angie's List's conduct alleged herein to be wrongful, unfair, inequitable, and unconscionable;

4.      Restitution of membership fees paid to Angie's List by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

5.      Disgorgement of the ill-gotten gains derived by Angie's List from its misconduct;

6.      Actual damages in an amount according to proof;

7.      A temporary and permanent injunction prohibiting Angie's List from enforcing the void, severable, and/or unconscionable provisions of the Membership Agreement, and enjoining Angie's List from engaging in the same wrongful conduct going forward including requiring Angie's List to adequately disclose facts to render truthful its representations about reviews, ratings, and search results as alleged herein;

8.      Punitive and exemplary damages;

9.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

10.     Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees; and

11.     Such other relief as this Court deems just and proper.

**Dated:  <u>March 11, 2015</u>**                                     Respectfully submitted,

                                                              */s/ KJG2445*
                                          _____
                                          Richard M. Golomb, Esquire
                                          Ruben Honik, Esquire
                                          Kenneth J. Grunfeld, Esquire
                                          David J. Stanoch, Esquire
                                          **GOLOMB & HONIK, P.C.**
                                          1515 Market Street, Suite 1100
                                          Philadelphia, PA 19102
                                          Phone: (215) 985-9177
                                          Fax:    (215) 985-4169
                                          Email: rgolomb@golombhonik.com
                                                     rhonik@golombhonik.com
                                                     kgrunfeld@golombhonik.com
                                                     dstanoch@golombhonik.com

                                          *Attorneys for Plaintiffs and the Class*