IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANELL MOORE, on Behalf of Herself and All Others Similarly Situated, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANGIE'S LIST, INC. | : | NO. 15-1243 |

MEMORANDUM

Dalzell, J.                                                            August 7, 2015

Jannell Moore sued the popular consumer-review site Angie's List, Inc. ("Angie's List") alleging its practices deceive consumers and seeking class action status for her four claims for relief.  Before us is defendant Angie's List's motion to dismiss this putative class action and nominal plaintiff Janell Moore's opposition thereto.

Moore is a Pennsylvania citizen and Angie's List is a Delaware corporation with its principal place of business in Indianapolis, Indiana.  Accordingly, we have jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

For the reasons detailed below, we conclude that Moore has standing to pursue her claims and we will deny Angie's List's motion to dismiss pursuant to Rule 12(b)(1).  We will also deny the defendant's motion to dismiss Moore's fraud and unfair trade practices claims and her breach of contract claim.  However, we will grant defendant's motion to dismiss plaintiff's unjust enrichment claim and her claim of a breach of the covenant of good faith and fair dealing.

I.      **Standard of Review**

A.      **Motion to Dismiss Under Rule 12(b)(1)**

A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1) because standing is a jurisdictional matter.  Constitution Party of Pennsylvania v. Aichele, 757

F.3d 347, 357 (3d Cir. 2014) (internal citation omitted).

A district court considering a motion pursuant to Rule 12(b)(1) must first determine whether that motion presents a "facial" attack or a "factual" attack on the claim at issue "because that distinction determines how the pleading must be reviewed." Id. A facial challenge contests the sufficiency of the complaint because of a defect on its face -- such as lack of diversity among the parties or the absence of a federal question. See Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In a facial challenge, we must consider the allegations of the complaint as true and consider only those allegations in the complaint, and the documents attached thereto, in the light most favorable to the plaintiff to see whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction. See Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); see also United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (terming a facial attack as "an alleged pleading deficiency"). Thus we apply the identical standard of review that we use in considering a motion to dismiss under Rule 12(b)(6).

A factual attack, on the other hand, challenges the actual failure of the plaintiff's claims to "comport with the jurisdictional prerequisites." Pa. Shipbuilding, 473 F.3d at 514. Such an evaluation may occur at any stage of the proceeding, but only once the defendant has filed an answer. Mortensen, 549 F.2d at 891. When a Court is confronted with a factual attack, "[it] is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and the plaintiff bears the burden of showing that jurisdiction does in fact exist. Id. Thus, a district court may consider evidence outside the pleadings, Gould Elecs. Inc., 220 F.3d at 176 (internal citation omitted), and no presumptive truthfulness attaches to the plaintiff's allegations, such that the existence of disputed material facts does not preclude a Court from evaluating the merits of

2

jurisdictional claims.  Mortensen, 549 F.2d at 891.

      **B.**      **Motion to Dismiss Under Rule 12(b)(6)**

      A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that a plaintiff has failed to state a claim for relief.  See Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint and "[t]he question, then, is whether the facts alleged in the complaint, even if true, fail to support the claim."  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal citation and quotation marks omitted).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678.

      Our Court of Appeals obliges district courts considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) to engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

When deciding a Rule 12(b)(6) motion to dismiss, the Court generally looks to the facts alleged in the complaint and its attachments, without reference to any other part of the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir.1994).  However, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

All well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiff and all inferences must be drawn in his or her favor.  See McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks omitted).  To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact)."  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

## II.   **Factual and Procedural Background**

We draw our recitation of the facts from Moore's complaint.

Angie's List operates a paid-membership review service on which consumers rate local service providers whose ranking, it boasts, "is determined by their recent grades and number of reviews.  Companies with the best ratings from members will appear first."  Complaint at ¶¶ 2, 3.[1]  The service also states that "service providers cannot influence their ratings on Angie's List," and "businesses don't pay," part of its "unwavering commitment to placing the interests of the

---

[1] See Complaint, Ex. B; see also
http://support.angieslist.com/app/answers/detail/a_id/54/~/understanding-and-sorting-search-results (accessed on July 29, 2015).

consumer first." Id. at ¶ 4.[2]  The gravamen of Moore's complaint is that, contrary to these public representations, Angie's List conceals from consumers that service providers can influence their ratings (by paying to either appear higher in rankings or suppress negative reviews) and that it alters rankings by suppressing positive reviews unless a service provider buys advertising, which Moore alleges can reach "tens of thousands of dollars per provider."   Complaint at ¶¶ 7, 11, 14, 36.  These undisclosed practices, she alleges, "deceive[], defraud[], and mislead[] its existing and potential member base," id. at ¶¶ 16, 37, and "violate the principles set forth in the FTC guidelines on advertising and endorsements."  Id. at ¶ 16.  She brings suit on behalf of a putative national class of plaintiffs for (1) breach of contract and of the covenant of good faith and fair dealing, (2) fraud and fraudulent inducement, and (3) unjust enrichment.  Additionally, she seeks relief on behalf of a putative class of Pennsylvania residents under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  Id. at ¶¶ 69-107.

Angie's List operates a paid-membership service that allows consumers to share service provider reviews and ratings, principally online, for about 253 local markets in the United States. Id. at ¶¶ 21, 22.  It features reviews and ratings for service providers in about 550 categories.  Id. at ¶ 29.  Angie's List claims over three million paying members.  Id. at ¶ 23.  The company went public in November of 2011 and reported revenue of $315 million in fiscal 2014 -- a 30% increase over the prior year.  Id.

All members agree to a nonnegotiable Membership Agreement.  Id. at ¶¶ 24, 25.  The Membership Agreement disclaims any control or manipulation of the consumer-generated reviews or ratings, stating in pertinent part that

> Angie's List does not guarantee the accuracy, integrity, quality or appropriateness of any Content transmitted to or through the

---

[2] Id. at Exs. C, E, and G.

> Service.   You acknowledge that Angie's List simply acts as a
> passive conduit and an interactive computer service provider for
> the publication and distribution of Content. . . .
>
> Angie's List does not endorse and is not responsible or liable for
> any Content, Service Provider Content, data, advertising, products,
> goods or services available or unavailable from, or through, any
> Service Providers. . . .

Id. at ¶ 27 (quoting ¶¶ 13 and 14 of the Membership Agreement, at Ex. A).

Moore alleges that Angie's List distinguishes itself from other Internet-based review services, such as Yelp, by claiming that its reviews, ratings and search results make its website a more reliable, consumer-driven service.  Id. at ¶ 30.  A "review" is a narrative description of a consumer's experience with a service provider and "ratings" are letter grades from A to F based on six criteria: overall experience, price, quality, responsiveness, punctuality and professionalism.  Id. at ¶ 31.  The letter grades or ratings represent the average of all member reviews submitted for a service provider.  Id.  Moore alleges that Angie's List members "justifiably and reasonably expect that search results will identify the 'best' provider, as advertised, based on the member's search inputs."  Id. at ¶ 32.  She points to Angie's List's Frequently Asked Questions ("FAQs"), which states

> 1.  How are companies sorted in search results?
> A provider's position in your search results is determined by their
> recent grades and number of reviews. Companies with the best
> ratings from members will appear first. To help prevent the same
> providers from always showing up first, companies who have
> earned similar grades are rotated within your results.

Id..  Moore also alleges that elsewhere in the FAQ Angie's List states that "Companies with a poor rating from our members will appear lower down on the List after businesses who have earned good ratings for superior work."  Id. at ¶ 33; see also Ex. I.  Moore alleges that search result rankings are important because (1) consumers assume the top-listed providers are the ones

most recommended by others, and (2) they rarely search past the first couple of pages.  Id. at ¶ 40.

Moore alleges that Angie's List manipulates its results in several ways.  She alleges that the company does not count negative reviews when compiling a rating and fails to make a negative review readable.  Id. at ¶ 42.  In part, she alleges, it does so by "extract[ing] 'advertising fees' from service providers to ensure that positive reviews are highly visible and factored into a service provider's rating and search result ranking."  Id. at ¶ 44.

As to Moore's own experience, she alleges that she joined Angie's List in 2012, renewing her membership in 2013 and 2014, and is currently a member.  Id. at ¶ 46.  In the Fall of 2014, she hired a contractor she found through Angie's List to remodel her kitchen.  Id. at ¶ 47.  At that time, there were no visible negative reviews of that contractor on Angie's List.  Id.  The contractor did not finish the work and refused to return the $4000 Moore had paid.  Id.  Shortly thereafter, she submitted a negative review of the contractor on Angie's List -- after which, she alleges, she was able to see for the first time a number of other negative reviews written by others, at least one of which revealed an experience identical to hers.  Id. at ¶ 48.  She contends that she would never have hired that contractor had she seen those negative reviews earlier.  Id. Moore alleges that she confronted an Angie's List representative about "the suppression of negative reviews" and that the representative "did not characterize [that] as an oversight or a technological error" -- and she further alleges that that suppression of the revenue occurred because the service provider paid money to Angie's List.  Id. at ¶ 49.  Moore contends that she had a reasonable expectation, as a member, that she would have access to all reviews for a given service provider.  Id. at ¶ 50.  When she revealed her experience to an electrician of her acquaintance, he allegedly told her that "he pays 'to be at the top' of search results" on Angie's

7

List.  Id. at ¶ 51.  Until then, Moore alleges she was unaware (and had no reason to know) that

service providers could "pay to manipulate search results."  Id.

Moore contends that Angie's List profits from the practices she alleges because it derives

most of its revenue from service providers:  76.8% in 2014, up from 73% in 2013, and 69% in

2012.  Id. at ¶ 53.  In 2014, Angie's List made about $241.9 million from service providers,

"more than three times the money it made in consumers' membership fees."  Id.[3]  Despite its

"consumers first" representations, she alleges, its interests are more aligned with service

providers than consumers, as the latter's contribution to revenue has been in steady decline.  Id.

(citing Angie's List 2013 Form 10-K at 3).  Rather than "acting as a passive conduit," as its

consumer literature states, she alleges that Angie's List aggressively markets to service providers

by telling them " 'advertising' fees will help to give a business 'an advantage of increased

exposure' that 'can propel you ahead of your competition.' "  Id. at ¶ 54.[4]  Moore alleges that

Angie's List does not disclose its service provider marketing to consumers, although it does tell

consumers that providers with an A or B rating may advertise "discounts" or "coupons" to

members, which she contends is distinct from paying to alter ratings.  Id. at ¶¶ 54, 55.

Moore alleges that the Membership Agreement represents that Angie's List acts as a

"passive conduit," provides "first-hand" consumer generated reviews, and does "not endorse"

service providers.  Id. at ¶ 72.  Additionally, she states that the company's FAQs also represent

that:

---

[3] Angie's List's revenue composition is notable in light of its representation that "[b]usinesses
are rated on the List only when a member submits a report", and its self-characterization as a
"consumer-driven service supported by membership fees."  Complaint, Ex. E at 1.
[4] See also Ex. H, Angie's List Marketing Guide, available at
http://content.angieslist.com/company/images/sp/almarketingguide.pdf (last accessed on July 30,
2015).

(1) "A provider's position in your search results is determined by their recent grades and
number of reviews";

(2) "Companies with the best ratings from members will appear first"; and

(3) "Companies with a poor rating from our members will appear lower down on the List
after businesses who have earned good ratings for superior work."

Id. at ¶ 73.  Angie's List's actions, Moore alleges, breached the Membership Agreement and
these representations.  Id. at ¶ 74.  She also claims such statements were false and misleading and
did not disclose enough facts to render them not misleading.  Id. at ¶¶ 82, 83.  She also brings
claims for unjust enrichment and violation of the UTPCPL which prohibits unfair methods of
competition and unfair or deceptive acts or practices.  Id. at ¶¶ 90-96, 97-107.

She alleges that she brings this action on behalf of a class defined as

> All persons in the United States who, within the applicable statute
> of limitations preceding the filing of this action through class
> certification, were paying members of Angie's List (the "National
> Class"); and

> All persons in the Commonwealth of Pennsylvania who, within the
> applicable statute of limitations preceding the filing of this action
> through class certification, were paying members of Angie's List
> (the "Pennsylvania State Subclass") (for purposes of the claim
> under Pennsylvania's Unfair Trade Practices and Consumer
> Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq. . . [.])

Id. at ¶ 57.

Moore filed her suit on March 11, 2015.  The defendant filed its motion to dismiss on
May 13, 2015.

## III.   **Discussion**

Angie's List moves for dismissal on a number of grounds.  It contends that Moore lacks
standing because (1) she cannot establish injury traceable to the provider advertising at the heart

of her complaint because, Angie's List avers, at the time Moore contracted with the service provider he was ineligible to pay Angie's List advertising revenue, (2) in her own review of the service she received she admits to having seen negative reviews and does not claim to have experienced any provider's unwarranted elevated placement (the other conduct she challenges), and (3) she failed to allege that she experienced suppression of reviews that altered the rankings on the site.  MTD at 11, 13, 15.  Additionally, Angie's List urges us to dismiss Moore's claim for fraud and violation of the UTPCPL because it contends that she has failed to identify a false or misleading statement or omission, or to allege detrimental reliance.  Id. at 18, 21, 22.  The company also argues that Moore has not alleged any breach of contractual duty.  Id. at 23. Angie's List also maintains that we must dismiss Moore's unjust enrichment claim because an enforceable contract governs the relationship between the parties rendering her quasi-contract equitable claim unavailable and duplicative of her common law claims.  Id. at 26.

We consider each argument in turn.

### A.    Moore's Standing To Pursue Her Claims

The "irreducible constitutional minimum" of standing contains three elements: "(1) the invasion of a concrete and particularized legally protected interest and resulting injury in fact that is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, meaning that the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Blunt v. Lower Merion School Dist., 767 F.3d 247, 278 (3d Cir. 2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The contours of the injury-in-fact requirement, "while not precisely defined, are very generous." Bowman v. Wilson, 672 F.2d 1145, 1151 (3d Cir. 1982).  As our Court of Appeals has

explained, "[a]ll that Article III requires is an identifiable trifle of injury, which may exist if the plaintiff has a personal stake in the outcome of the litigation."  National Collegiate Athletic Ass'n v. Governor of New Jersey, 730 F.3d 208, 219 (3d Cir. 2013) (internal citations, quotation marks and alterations omitted).

As a threshold matter, Angie's List contends that Moore lacks standing to pursue her claims because she did not suffer any injury from the practices which form the gravamen of her complaint.  The company urges us to consider facts it seeks to put before the Court -- concerning the identity of the deficient contractor and its history with Angie's List, as well as Moore's review history -- which, it contends, fatally undercut Moore's assertions.   MTD at 3-6.

According to the Declaration of Evan Hock, a Senior Director of Marketplace Performance at Angie's List, he combed through Angie's List's internal records of member reviews, using the information in Moore's complaint, in order to locate the identity of the contractor she hired.  Decl. Of Evan Hock at ¶¶ 6-10.  Hock declares that, using Angie's List's internal database, the company was able to establish that Bravo Philadelphia, the contractor it identified as Moore's provider, has no past or current advertising agreement with the company. Id. at ¶¶ 18-20.  "Moreover, Bravo Philadelphia was not eligible to advertise at any time given its poor ratings and historical failure to respond to member complaints and Angie's List's Complaint Resolution team."  Id. at ¶ 21.  Hock appends the contractor's negative reviews and failing grades dating to July of 2012 as an exhibit to his Declaration.  Id. at Ex. 6.  Additionally, he contends that the company's responses to FAQs on the pull-down tab, visible on one of the webpages Moore cites, discloses to members service providers' eligibility to advertise.  Id. at ¶ 14.  Hock also points us to a link-within-a-link on a page Moore cites that, he maintains, addresses the question "Do businesses advertise?"  Id.  Other FAQ responses, Hock avers,

disclose Angie's List's practice of permitting certain eligible providers to pay to advertise "so long as they maintain a high rating and adequately respond to [the] Angie's List customer Complaint Resolution team."  Id. at ¶ 16.  Finally, he avers that "[a]ccording to Angie's List's records, no reviews were ever deleted or hidden from the Bravo Philadelphia profile.  The reviews pre-dating [Moore's] experience reflected in Exhibit '6' would have been visible to her in September [of] 2014."  Id. at ¶ 23.  Angie's List argues that these facts support its contention that Moore could not have suffered any injury from practices she alleges Angie's List followed and, specifically, suffered none of the alleged injuries in connection with the contractor she hired.  MTD at 4.

Angie's List urges us to consider its factual recitals concerning her review and others' because, it contends, Moore expressly referred to her review in her complaint.  Id. at 5 n. 1.  It contends, too, that plaintiff's "allegations about what was or was not included on the Angie's List website at the time of her hiring decision" permit us to "consider documents that reflect what was actually available on the site at that time."  Id. (citing In re Donald J. Trump Casino Sec. Litig. – Taj Mahal Litig., 7 F.3d 357, 368 n. 9 (3d Cir. 1993)).  It also maintains that our Court of Appeals permits factual rebuttals to conclusory allegations when the defendant has presented competing facts disputing jurisdiction, Reply at 2 (citing Aichele, 757 F.3d at 358), or if it can be shown through affidavits that jurisdiction is lacking (citing Berardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198 (3d Cir. 1990) (Alito, J.)).

Moore counters in opposition that a motion to dismiss before the defendant answers and the parties have engaged in discovery is perforce a facial challenge.  Mem. of Law in Opp. at 6 (citing Aichele, 757 F.3d at 358).  As such, she maintains, we must evaluate her complaint under the same standard as a Rule 12(b)(6) motion, taking as true all factual allegations of her

complaint and construing them in the light most favorable to her as the non-moving party, with all inferences drawn in her favor.  Id. at 7.  And she contends that the defendant relies in error on cases where a defendant successfully challenged jurisdiction on different bases, such as a failure to exhaust administrative remedies, which she maintains are not akin to the factual challenge to standing that Angie's List presses here.  Id. at 7 (citing I.K. ex rel. B.K. v. School Dist. of Haverford Tp., 2011 WL 1042311 at *2 (E.D. Pa. March 21, 2011) (Dalzell, J.)).

      We agree with Moore.  As we stated above, a motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1) because standing constitutes a jurisdictional threshold.  Aichele, 757 F.3d at 357 (internal citation omitted).  Our first step is to determine whether the movant proffers a facial or factual attack.  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).  Here, Angie's List filed its motion to dismiss before it answered Moore's complaint, therefore its motion constitutes a facial attack on her complaint.  As such, we may only consider a defect that is evident on the face of the complaint.  Mortensen, 549 F.2d at 891.  For example, in KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936), the Supreme Court held a pre-answer motion could recite "facts dehors the complaint" to challenge jurisdiction where the amount in controversy did not meet the jurisdictional threshold.  See also Berardi, 920 F.2d at 200 (affirming dismissal of a complaint where the defendant was not subject to the statute under which plaintiff sued).  Similarly, as our Court of Appeals has made pellucid, lack of diversity among the parties or the absence of a federal question may also be facially challenged before the defendant files an answer. Mortensen, 549 F.2d at 891.

      But the facts that Angie's List seeks to put before us are a far cry from these facial defects -- indeed, as the product of internal investigation, the facts Hock disclose constitute

unilateral factual discovery.  As Hock details, Angie's List determined the identity of the

unnamed contractor by searching its records and used its internal database to determine the

contractor's advertising and ratings history.   See MTD at 4, 5.  These are hardly defects on the

face of Moore's complaint.  The defendant relies in error on non-binding district court cases that

do not fully state the limited circumstances under which our Court of Appeals permits us to

consider facts supporting a challenge to facial defects.  See Reply at 4.  As our Court of Appeals

has repeatedly stated, see, e.g., Mortensen, 549 F.2d at 892 n. 17, we may not consider facts until

a plaintiff's allegations have been controverted.[5]  For that reason, we will disregard in its entirety

the factual recital Angie's List offers to challenge Moore's standing and for other reasons

detailed below (however persuasive its assertions may be at some future point in this litigation).

Defendant's argument that we should consider the content of plaintiff's review on its

website, as well as others' reviews, because Moore referred to it in her complaint, similarly fails.

Angie's List relies in error on Trump, where our Court of Appeals affirmed a district court's

consideration of an offering prospectus because the complaint "directly challenged the

prospectus," 7 F.3d at 368 n. 9.  Here, by contrast, Moore's complaint does not directly challenge

her review.  Rather, she challenges the content of Angie's List's Membership Agreement, its

representations on its website, and the grades and rankings, which she alleges are manipulated.

None of these allegations rest on her review, and we will therefore not consider at this time

Moore's review or any reviews that others may have posted.

Finally, our Court of Appeals permits a district court to consider any "undisputedly

---

[5] Our Court of Appeals has long held that a motion to dismiss is not the proper vehicle in which
the defendant may dispute facts.  Such matters outside the pleadings are more properly raised as
affirmative defenses and litigated after an answer has been filed.  See, e.g., Robinson v. Johnson,
313 F.3d 128 (3d Cir. 2002); see also Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092 (3d
Cir. 1975).

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits, 998 F.2d at 1196.  The declaration of an Angie's List official does not qualify as such an "undisputedly authentic document" nor do the customer reviews which the defendant urges us to consider.  A defendant's motion supported by a sworn statement of facts must be construed as a factual attack.  Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982).  And, as we elaborate above, Angie's List's motion to dismiss may only be construed as a facial attack because it filed its motion before answering Moore's complaint.  As our Court of Appeals teaches, we "must convert a motion to dismiss to a summary judgment motion if [we] consider[] extraneous evidence submitted by the defense[,]to afford the plaintiff an opportunity to respond." Pension Benefits, 998 F.2d at 1196 (internal citation omitted).  As the parties have not yet begun discovery, such a decision is quite premature.

As a result, we must apply to Angie's List's  Rule 12(b)(1) motion the identical standard of review that we use in considering a motion to dismiss under Rule 12(b)(6), that is to say, we must consider only the allegations of Moore's complaint in the light most favorable to her.  See Gould Elec. Inc., 220 F.3d at 176.   According to Moore's complaint, she was an Angie's List customer in the Fall of 2014 when she hired a contractor to remodel her kitchen whom she found through Angie's List.  Complaint at ¶¶ 46, 47.  She also alleges that Angie's List charges service providers "advertising fees" "to ensure that positive reviews are highly visible and factored into a service provider's rating and search result ranking." Id. at ¶ 44.  She alleges injury stemming from that alleged practice, in that she states she was only "able to see, for the first time, a number of other negative reviews" about the contractor she hired once she submitted her own negative review and after he had failed to do the contracted work or return her money.  Id. at ¶¶ 47, 48.

Further, contrary to the company's representation in its Membership Agreement that it is a "passive conduit" for consumer reviews, Moore alleges that Angie's List rewards providers by altering the search results and the visibility of reviews based on a provider's expenditures.  Id. at ¶¶ 27, 42, 43.  These allegations, certainly more than a trifle, suffice to warrant Moore's standing to pursue her claims at this point in the litigation.

Angie's List also insists that we dismiss Moore's complaint for lack of standing because she has failed to plead specific facts that she relied on untrue statements about the product's attributes.  MTD at 15, 16.  In support of that argument, the defendant again seeks to haul before the Court documents to which the plaintiff refers either tangentially or not at all.  Thus, Angie's List points us to its disclosure that "highly rated providers who also offer coupons are placed at the top of search results", and that members can "sort providers using different criteria."  Id. at 16 (citing Complaint, Ex. I at 2).  This, the defendant contends, comprises dispositive evidence contradicting the plaintiff's assertions.  Id.  And the defendant again points us to "[o]ther publicly available documents," including responses to FAQs, that "[p]laintiff selectively left out of her Complaint."  Id.

As we stated above, this argument fails because we cannot, at this stage of the litigation, consider factual allegations other than those on which the plaintiff relies and must consider those in the light most favorable to her.  Moore's factual allegations raise a right to relief above the speculative level.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) (citing Twombly, 550 U.S. at 545).  We conclude, therefore, that Moore has standing to pursue her claims and will disregard the defendant's factual assertions, for whatever purpose they are offered, at this stage in the litigation.

B.      <u>**Moore's Fraud And UTPCPL Claims**</u>

Next, Angie's List argues that Moore must identify specific false statements and the circumstances underlying her justifiable reliance on them in order to sustain her fraud and UTPCPL claims.  MTD at 18.  The company contends that those claims fail in both of those ways.  <u>Id.</u>

At an initial matter, the defendant identifies as Angie's List statements the following assertions:

(1) "Service providers cannot influence their ratings";

(2) Businesses "can't pay to be on Angie's List";[6]

(3) A review is never removed unless the posting member contacts Angie's List to delete it;

(4) Angie's List does not "endorse" providers; and

(5) A "provider's position in [a member's] search results is 'determined by their recent grades and number of reviews.  Companies with the best rating from members will appear first.' "  <u>Id.</u> (citing Complaint at ¶¶ 3, 4, 43, 72, 73 and 82)

Angie's List maintains that Moore has not alleged any facts showing these statements are untrue.  <u>Id.</u>

> "[A]t best, [p]laintiff appears to allege that an advertising provider received a higher <u>placement</u> in a member's search results – which is distinct from its rating, i.e. the letter grade ranging from "A" to "F" assigned to service providers by members."

<u>Id.</u> at 19 (emphasis in original).  It also contends that Moore fails to allege that any business secured its place on Angie's List as a result of advertising revenue (as opposed to the fully

---

[6] The Complaint and the company website both state that businesses "don't" pay to be on the website.  <u>See</u> Complaint at ¶ 4 and Ex. E at 1.

disclosed practice of businesses paying to offer coupons or discounts).  Id.  The defendant

maintains Moore has not identified negative reviews deleted without member consent or any

endorsements offered by Angie's List.  Id.  Finally, the defendant observes that Moore has taken

statements out of context by failing to include Angie's List's disclosure that advertising

providers appear at the top of search rankings "by member request" when they also offer

coupons.  Id. at 20; see also Complaint, Ex. B at 1.

       Angie's List also argues that Moore cannot meet the Rule 9(b) pleading standard

"without also alleging facts establishing that she personally was exposed to and relied in some

particular way on an allegedly false statement in making a relevant decision" -- a requirement

under both Pennsylvania and Indiana law.  MTD at 21 (emphasis in original).[7]

       Finally, Angie's List contends that Moore's allegations of concealment are "conclusively

refuted" by the exhibits to her complaint, which it maintains show that members are told that

"[b]y member request, highly-rated providers who also offer coupons are placed at the top of

search results," and members can "sort providers using different criteria" so that providers

offering promotions would not be ranked at the top.  Id. at 16, 22.  As a result, it urges that

Moore's claims must fail because her own exhibits contradict her allegations.  Id. at 22.  As to

the purported omissions about the suppression of negative reviews, "there are no facts pled that

Angie's List ever 'suppressed' a negative review in exchange for advertising revenue or

threatened to 'suppress' a positive review if the provider did not pay advertising revenue."  Id. at

---

[7] Angie's List draws our attention to the choice of law clause in its contract.  MTD at 7; see also
Complaint, Ex. A at 17-18 ("This Agreement and the relationship between You and Angie's List
will be governed by the laws of the State of Indiana, notwithstanding the choice of law
provisions of the venue where any action is brought[.]")  Angie's List states that for purposes of
its motion to dismiss, the choice of law provision is not material as Moore "has failed to satisfy
certain substantive pleading requirements shared by both states' laws."  MTD at 9, 10.  As
Angie's List does not press its contractual choice of law provision, we will defer consideration of
it for now.

22, 23. Iqbal, the defendant maintains, requires more than the "sheer possibility that a defendant has acted unlawfully." Id. at 23 (quoting Iqbal, 556 U.S. at 678).

Moore responds in opposition that her complaint has sufficiently pled Angie's List's affirmative misrepresentations and omissions. Mem. of Law in Opp. at 23 (citing Complaint at ¶¶ 6, 8-10, 38-43, 54 and 82-86). She contends that Angie's List's representations about the consumer-driven nature of its ratings were a material inducement to her obtaining membership. Id. at 20. And she maintains that the ability to sort search results "does not remedy the fraud that occurs in Angie's List's default setting. . . in which [it] does not disclose which providers are paying for enhanced placement without regard to consumer ratings or reviews[.]" Id. at 21. She also contends that "reliance is presumed in omission cases," id. at 23 (citing Bunnion v. Consol. Rail Corp., 1998 WL 372644 (E.D. Pa. May 14, 1998) (Bartle, J.)), and UTPCPL cases, id. at 24 (citing Drayton v. Pilgrim's Pride Corp., 2004 WL 765123 (E.D. Pa. Mar. 31, 2004) (Buckwalter, J.)). She points to her allegations that Angie's List's misrepresentations or omissions were "material and a substantial factor" in her and class members' paying to become Angie's List members and that she and class members were justified in relying on those misrepresentations. Id. at 24.

Angie's List replies that Moore fails to plead with particularity because she has not identified a provider who paid to be on Angie's List or an instance where a provider paid to influence his rating. Reply at 13. The company states that its practice of ranking advertising providers higher in search results is fully disclosed, either in documents attached to Moore's complaint or referred to in it. Id. The company also argues that Moore has failed to show that she detrimentally relied on any alleged misrepresentation. Id. at 14. Finally, Angie's List contends that Moore's claims of alleged omissions cannot survive because the defendant had no

duty to disclose "in the absence of some affirmative statement upon which [Moore] has properly pled reliance and that was supposedly misleading due to an omission." Id. at 15.

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Our Court of Appeals teaches that Rule 9(b) requires heightened particularity in fraud pleadings to place a defendant on notice of the precise misconduct with which he or she is charged and to safeguard a defendant against spurious charges of immoral and fraudulent behavior.  See Seville Indus. Mach. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  Plaintiffs can satisfy Rule 9(b) "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004) (internal quotations removed), abrogated in part on other grounds by Twombly, 550 U.S. at 557.

It is well-settled that intentional misrepresentation or fraud contains the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994) (citing W. Page Keaton, Prosser and Keaton on the Law of Torts, § 105 (5th ed. 1984) and the Restatement (Second) of Torts § 525 (1977)).  As the Pennsylvania Supreme Court explained, "The tort of intentional non-disclosure has the same elements as the tort of intentional misrepresentation except that in a case of intentional non-disclosure the party intentionally conceals a material fact rather than making an affirmative misrepresentation." Id. at 889 n. 12. Concealment or non-disclosure is a long-established actionable tort in the Commonwealth.  See

Neuman v. Corn Exchange Nat'l Bank & Trust, 51 A.2d 759, 764 (Pa. 1947).  "Such fraud arises where there is an intentional concealment calculated to deceive."  Gibbs, 647 A.2d at 889 n. 12.

The UTPCPL has a somewhat more liberal pleading standard since that statute's 1996 amendment, making proof of common law fraud unnecessary in cases where a plaintiff alleges deceptive conduct.  See Fazio v. Guardian Life Ins. Co. of America, 62 A.3d 396, 405 (Pa. Super. Ct. 2012) (citing cases).  Nonetheless, in order to maintain a UTPCPL cause of action, "a plaintiff must show that he [or she] justifiably relied on the defendant's wrongful conduct or representation."  Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004).  Thus, both common law fraud and fraudulent conduct under the UTPCPL require a showing of justifiable reliance.

As we stated above, in a motion to dismiss we must consider the factual allegations of the complaint as true and in the light most favorable to the plaintiff.  Moore alleged that she submitted a negative review of her contractor on Angie's List, at which point she saw for the first time that he had received other negative reviews, information which she contends would have forestalled her hiring the contractor.  Compl. at ¶ 48.  She also alleged that she had a reasonable expectation of access to all reviews for a given service provider.  Id. at ¶ 50.  And she alleged that she confronted an Angie's List representative about "the suppression of negative reviews," id. at ¶ 49, and spoke of her experience to an electrician of her acquaintance who allegedly told her that "he pays 'to be at the top' of search results" on Angie's List.  Id. at ¶ 51.  Moore also stated that until then she was unaware (and had no reason to know) that service providers could "pay to manipulate search results."  Id. at ¶ 51.  Indeed, she points in her complaint to the company's representations that "businesses don't pay" and that it always places "the interests of the consumer first."  Id. at ¶ 4.

The altered rankings that Moore alleges, and her acquaintance's disclosure that he paid to alter his ranking, as well as the defendant's nondisclosure of business practices that she claims, sufficiently allege a form of misrepresentation material to Moore's use of the website. She also alleges her reliance on the defendant's manifold utterances of its consumer-oriented ethos.[8] And she has sufficiently pled Angie's List's non-disclosure or omission of its business practices with providers.

These allegations suffice to nudge Moore's claim over the crucial line that separates conceivable and plausible. See Twombly, 550 U.S. at 570. And they inject precision and some measure of substantiation into Moore's allegations of fraud by spelling out circumstances that contradict certain Angie's List representations, including that service providers cannot influence their ratings and that businesses do not pay to be on Angie's List. Moore has also pled with requisite specificity that she relied on Angie's List's purportedly false representations that it does not endorse providers and on its explanation of how recent grades and reviews determine provider ranking in a member's search results.

We are mindful that mutual discovery may eventually uncover contradictory facts. But we must again decline to consider the facts and representations Angie's List seeks to put before the Court. See MTD at 20, 22; see also Reply at 16 and n. 11. As elaborated above, we may consider only an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss," Pension Benefits, 998 F.2d at 1196, which Angie's List's contradictory

---

[8] Moore argues in error that reliance may be presumed in fraud and UTPCPL claims. Our colleagues have presumed reliance only under narrow circumstances not present here, such as securities fraud, see Bunnion, 1998 WL 372644 at *9 n.11, and manufacturing defects, see Drayton, 2004 WL 765123 at *7 (citing Zwiercan v. General Motors Corp., 2002 WL 31053838, 58 Pa. D. & C. 4th 251 (Pa. Com. Pl. 2002)).

representations and website citations most assuredly are not.[9]

We will accordingly deny Angie's List's motion to dismiss Moore's fraud and unfair trade practices claims.

### C.        **Moore's Breach of Contract Claim**

Angie's List moves to dismiss Moore's breach of contract claim because (1) she has not alleged the breach of any duty imposed by the Membership Agreement, but merely offers conclusory allegations that the defendant's actions breached that Agreement, which the defendant maintains cannot state a claim in light of its factual contentions, (2) Moore's description of the Agreement as a contract of adhesion, see Complaint at ¶ 70, is not a substantive claim, (3) she cannot identify any breach of the Agreement because it does not include the FAQs with which Moore alleges Angie's List did not comply, and (4) neither Pennsylvania nor Indiana recognize a claim for breach of the covenant of good faith and fair dealing when a contract governs the parties' relationship.  MTD at 23-25.  Angie's List maintains that plaintiff's arguments are merely conclusory and cannot rest on any representations in Angie's List's FAQs.  Reply at 17, 18.

Moore responds in opposition that she has pled the elements of a breach of contract claim by alleging that Angie's List (1) did not act as a "passive conduit," (2) manipulated providers' rankings, ratings and reviews, (3) did not offer a consumer-generated review service because it suppressed negative reviews, and (4) endorsed certain providers by taking money in exchange for altering their ranking and the visibility of reviews -- all of which she contends represent

---

[9] We note in passing that, in its attempt to persuade the Court to consider FAQs from its website that it believes contradict Moore, Angie's List quotes out of context from our Opinion in Hofferica v. St. Mary Med. Ctr., 817 F. Supp. 2d 569, 573 (E.D. Pa. 2011).  See Reply at 16 n. 11.  We remain unpersuaded.

specific duties imposed on the defendant "through the language of its own contract." Mem. of Law in Opp. at 15, 16 (citing Complaint at ¶¶ 2-5, 16, 27, 28, 35-43, 72, 74). She also counters that she has suffered damage as a result of this breach, id. at 16 (citing Complaint at ¶ 80), and insists that a covenant of good faith and fair dealing is "implied in every contract," id. at 17, where bad faith includes "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms [and] an interference with or failure to cooperate in the other party's performance." Id. (quoting Somers v. Somers, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992)). She contends that Angie's List evaded the spirit of the bargain by agreeing to provide consumer-generated rankings, ratings and reviews, while keeping silent as to the fact that service providers "can and do pay to influence these metrics." Id. at 18.[10]

Under Pennsylvania law, a party asserting a breach of contract claim must allege (1) the existence of a contract, (2) the breach of a duty imposed by the contract, and (3) damages.[11] CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). "The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001) (internal citation omitted). The entirety of the written instrument embodies the intent of the parties. Id. "When a writing is clear and unequivocal, its meaning must be determined by its contents alone." Robertson v. Drexel Univ., 991 A.2d 315, 318 (Pa. Super. Ct. 2010) (internal

---

[10] Moore states that the Angie's List Membership Agreement bears the hallmarks of a contract of adhesion as it is a pre-printed standard form that members cannot negotiate. Mem. of Law in Opp. at 17 n. 8. (citing Robson v. EMC Ins. Co., 785 A.2d 507, 510 (Pa. Super. Ct. 2001). But she argues that we need not decide now whether it is a contract of adhesion. We disregard the form of the contract as she makes no claim that rests on that form.

[11] The elements of a breach of contract suit are identical under Indiana law. See Fowler v. Campbell, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993).

citation omitted).

Clearly, the FAQs that Moore cites are not part of the Membership Agreement, and therefore any divergence from those representations made therein cannot be considered a breach of the Agreement.  Moore does, however, cite three provisions of the Membership Agreement in her complaint:

> **1. ANGIE'S LIST SERVICE**
> Angie's List provides reviews and ratings on a variety of Service Providers based upon the actual first-hand experiences other users have had with these Service Providers and also provides You with the opportunity to provide Your own reviews and ratings on the Service Providers You use. . . .
>
> **13. PUBLICATION AND DISTRIBUTION OF CONTENT**
> Angie's List does not guarantee the accuracy, integrity, quality or appropriateness of any Content transmitted to or through the Service. You acknowledge that Angie's List simply acts as a passive conduit and an interactive computer service provider for the publication and distribution of Content . . . .
>
> **14. SERVICE PROVIDERS**
> Angie's List does not endorse and is not responsible or liable for any Content, Service Provider Content, data, advertising, products, goods or services available or unavailable from, or through, any Service Providers . . . .

Complaint at ¶¶ 26, 27 and Ex. A.  These provisions unambiguously depict the website with which Moore contracted as a provider rating system based on "first-hand" consumer reviews, unshaped by input from any other source.  She alleges a breach by averring that (1) an electrician of her acquaintance disclosed that he pays Angie's List to alter his rating, and (2) she could not initially view all negative reviews of the provider she contracted with -- both of which counter Angie's List's representation that it is simply a passive conduit for the publication of content about providers.  Again, taking her allegations as true (and disregarding the defendant's factual averments, as we must), these allegations suffice to nudge Moore's claim as to those three

provisions alone over the crucial line that separates conceivable and plausible, see Twombly, 550 U.S. at 570.

But her claim for a breach of the duty of good faith and fair dealing nevertheless must fail under Pennsylvania law.  Section 205 of the Restatement (Second) of Contracts states that every contract imposes on each party a duty of good faith and fair dealing in its performance and its enforcement.  See Ash v. Cont'l Ins. Co., 932 A.2d 877, 883 n. 2 (Pa. 2007).   Until the Pennsylvania Supreme Court determines whether the implied duty creates a cause of action, our colleagues have concluded that there is no independent cause of action for breach of a duty of good faith and fair dealing.  See Goleman v. York Intern. Corp., 2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) (Baylson, J); see also LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008) ("This court finds that Pennsylvania law would not recognize a claim for breach of [a] covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim since the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim."). We therefore conclude that a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim.

Accordingly, we will deny the defendant's motion to dismiss Moore's breach of contract claim as to the three provisions of the Membership Agreement, but grant their motion as to any other representations on the website.

### D.    Moore's Unjust Enrichment Claim

Finally, Angie's List seeks dismissal of Moore's unjust enrichment claim because the relationship between the parties is governed by the Membership Agreement.  MTD at 26.  It argues that under both Pennsylvania and Indiana law, recovery pursuant to such a claim is

unavailable when an explicit contract exists.  Id. (quoting Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) ("Under Pennsylvania law, the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract") (citation, internal quotation marks and alteration omitted); see also Kusper v. Poll Farms, Inc., 649 F. Supp. 2d 917, 922 (N.D. Ill. 2009).

Moore responds in opposition that she has pled the elements of an unjust enrichment claim and she should therefore be able to recover under that theory because she and other members paid funds that enriched Angie's List, but the company failed to deliver on its promised "unfiltered consumer content."  Mem. of Law in Opp. at 25.  She further argues that (1) she sues for unjust enrichment in the alternative to breach of contract, (2) her unjust enrichment claim alleges additional fraudulent conduct "outside of any contractual relationship," and (3) she may recover for a benefit conferred under an unenforceable or void contract.  Id. at 25-27.

Moore's claim for unjust enrichment cannot survive the defendant's motion to dismiss. To begin with, neither party questions the validity of the Membership Agreement as a contract. "[T]he doctrine of unjust enrichment is inapplicable when the relationship  between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings."  Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) (internal quotation marks and citations omitted).  As our Court of Appeals explained, "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." Grudkowski v. Foremost Ins. Co., 556 F. App'x 165, 170 n.8 (3d Cir. 2014).  As the validity of the contract between the parties is not in question, Moore may not pursue her unjust enrichment claim either in the alternative to her breach of

27

contract claim or to recover under an unenforceable contract.  As we elaborated above on the fraud claims Moore may pursue, we find there is no avenue to shoehorn additional claims of fraudulent conduct under the guise of unjust enrichment.

We will accordingly grant Angie's List's motion to dismiss Moore's unjust enrichment claim.

## IV.    <u>Conclusion</u>

For the reasons stated above, we grant in part and deny in part Angie's List's motion to dismiss Moore's complaint.

An appropriate Order follows.

BY THE COURT:

 /s/ Stewart Dalzell, J.
Stewart Dalzell, J.