UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANELL MOORE, MICHELLE ZYGELMAN, and GARY GLICK, on Behalf of Themselves and All Others Similarly Situated, | **CIVIL ACTION NO: 2:15-cv-01243** |
| Plaintiffs, | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| vs. | |
| ANGIE'S LIST, INC., | |
| Defendant. | |

**CONDITIONAL AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Janell Moore, Michelle Zygelman, and Gary Glick, by and through undersigned counsel, on behalf of themselves and all persons similarly situated, complain and allege as follows:

**NATURE OF THE CASE**

1.     This is a civil action seeking monetary damages, restitution, injunctive relief, and declaratory relief from Defendant, Angie's List, Inc. ("Angie's List"), arising from Angie's List's unfair, deceptive, and misleading practices which lures consumers into paying for access to allegedly unfiltered, "passive," consumer-driven search results and rankings of local service providers, and related content. However, Angie's List manipulates "the List" for the company's own economic gain, all without the consumers' knowledge.

2.     Angie's List is a review service, with paid memberships, which allows consumers to share reviews and ratings of local service providers, such as contractors, dentists, and mechanics. Members can then search reviews and ratings via the Angie's List website, www.angieslist.com.

3.      Angie's List falsely assures consumers that a service provider's position in a member's search results "is determined by their recent grades and number of reviews. Companies with the best ratings from members will appear first."[1]

4.      Angie's list deceives consumers with untrue assurances that service providers cannot influence their ratings on Angie's List by, among other things, affirmatively promising that: "[b]usinesses don't pay" and "[c]ompanies can't pay to be on Angie's List." Instead, Angie's List emphasizes its unique consumer-first philosophy, which demonstrates the company's unwavering commitment of placing the interests of the consumer first. Further, Angie's List claims to require identification with reviews, by not allowing anonymous reviewers, to maintain the integrity of reviews.  By always placing the interest of the consumer first, Angie's List helps its members find the "best" provider for their local service needs.

5.      Statements such as these, reflected in a consistent, constant and pervasive mass-marketing campaign, misleadingly encourage existing members, as well as potential new clients, to believe that Angie's List search results and related content are based on unfiltered feedback from consumers, allowing consumers to access this valuable and reliable information unaffected and unshaped by any outside input, including from paid advertisers or Angie's List itself.  In support of its misleading campaign to attract and maintain customers, Angie's List's employs a standardized membership agreement form (the "Membership Agreement").  *See* Ex. A hereto.  This agreement explicitly states that the company "simply acts as a passive conduit" for reviews and ratings "based upon actual first-hand experiences other users have had[,]" and that Angie's List "does not endorse" any service providers.[2]  However, contrary to Angie's List reports, this is not how Angie's List operates.

---

[1]   *See* Angie's List FAQ, "Understanding and sorting search results," at http://support.angieslist.com/app/answers/detail/a_id/54/~/understanding-and-sorting-search-results (updated Aug. 3, 2015) (last accessed Dec. 14, 2015).

[2] *See* Membership Agreement, at 9.

6.      Angie's List conceals from consumers that service providers are in fact able to and do pay "advertising" fees to influence "the List."

**Artificially Higher Rankings in Search Results**

7.      Service providers can and do pay hefty "advertising" fees to appear higher in the members' search results.  For instance, when an Angie's List member wants to find a service provider, the user can search the Angie's List website for nearby providers.  Her search should show results for all nearby providers and feature all member reviews for those providers, whether good or bad, as well as each provider's ratings (i.e., a letter grade of "A" through "F").  The search results should rank providers based on the stated objective standards, such as from highest to lowest ratings, those with the best or most positive reviews, or some combination of both.  In the alternative, at the very least, search results should show providers in an objective order, such as alphabetized by name or by geographical location in proximity to the user.

8.      This is not how Angie's List actually works.  Angie's List alters the order in which service providers are listed in members' search results, contrary to the assurances made by Angie's List, and without members' knowledge.  Angie's List ranks service providers higher based on how much providers pay in "advertising" fees.  In the above example, a provider with an "A" rating and all positive reviews, but who did not pay any "advertising" fees, will be ranked lower than a provider who did pay the "advertising" fees but has worse reviews or ratings.  This information is not disclosed to current or prospective members.

9.      One investigative report found that the top reviewed heating and air conditioning company in their area was ranked below eleven others that had inferior ratings or just a handful of reviews.[3]  The higher ranked companies paid $12,000 to $15,000 to appear higher on the List.[4]  A different service provider, who was stuck on the eighth page of results, was allegedly quoted $50,000 by Angie's List to be ranked higher in search

---

[3] "Ain't It Time To Say Goodbye to Angie's List?," Forbes (Oct. 9, 2013).

[4] *Id.*

results.[5]  Another investigative report said: "If you're looking for a contractor, you're only going to look at the first page or two.  That skews the ratings.  I don't think they're being straight with the public on that."[6]  Angie's List even further manipulates users when the user elects to use Angie's List call center instead of the company website.  Angie's List employees will provide the user with a service provider, but the provider is chosen from a list of only four and the providers are not chosen based on reviews or ratings.[7]

10.    On information and belief, Angie's List also extorts "advertising" fees from service providers by threatening that service providers will be buried on the List unless a service provider pays the requested amount to appear higher-up in search results, or for related add-ons designed to prop-up a service provider's visibility, ratings, or reviews.  This distorts the integrity of search results because a consumer cannot be sure if the search actually located the best-rate service provider.

11.    In addition, on information and belief, Angie's List employs an opaque dispute resolution process that can result in the removal of consumers' reviews from a service provider's profile, thus robbing other paying members of the value-add promised by Angie's List – unfiltered consumer feedback and content.

12.    Because of these misleading and deceptive acts, members do not know, or cannot reasonably discover, the collective membership's true, unfiltered assessment of a given service provider.

**Angie's List's Fraudulent and Deceptive Practices Harm Consumers**

13.    Angie's List does not deliver the value that it advertises to consumers. Specifically, Angie's List falsely promises that paid membership will be given unfiltered access to 100% consumer-driven content, such as reviews and ratings of service providers, and that search results rankings will be based on those reviews and ratings.

---

[5] *Id.*

[6] "The Boss Responds: A Call to Angie's List is Answered by Angie Herself,"  Santa Barbara Independent (July 19, 2014).

[7]    Angie's    List    Marketing    Guide,    at    6,    available    at http://content.angieslist.com/company/omages/sp/almarketingguide.pdf (last accessed Dec. 14, 2015).

14.     Angie's List deceives, defrauds, and misleads its existing and potential member base by wrongfully manipulating consumer-driven search result rankings, and other consumer-generated content. These wrongful acts violate the principles set forth in the FTC guidelines on advertising and endorsements. *See* 16 C.F.R. Part 255. In essence, Angie's List does not help members find the "best" service provider, but rather the one who paid the most money to Angie's List. This is not placing the "interests of the consumer first."

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Angie's List.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Angie's List is subject to personal jurisdiction here and regularly conducts business in this district, one Plaintiff resides in this district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## THE PARTIES

17.     Plaintiff, Janell Moore, is a citizen of the commonwealth of Pennsylvania. She was a paying member of Angie's List starting in approximately 2012 or 2013, through approximately June 2015.

18.     Plaintiff, Michelle Zygelman, is a citizen of the state of California. She has been a paying member of Angie's List since approximately 2012.

19.     Plaintiff, Gary Glick, is a citizen of the state of New Jersey. He has been a paying member of Angie's List since approximately 2012 or 2013.

20.     Defendant Angie's List is a Delaware corporation with its principal place of business at 1030 E. Washington Street, Indianapolis, Indiana. Angie's List is licensed to do business in Pennsylvania (among other states) and has specific, as well as general and systematic, contacts in Pennsylvania.

21.     Angie's List operates a paid-membership review service that allows consumers to give reviews and ratings of local service providers for the use of other Angie's List members.  It provides this service for approximately 253 local markets in the United States primarily through its website, www.angieslist.com.

22.     Upon its establishment in 1995, Angie's List collected and shared reviews and ratings of service providers over the telephone and by going door-to-door.  Angie's List has since become one of the leading, if not the largest, paid-membership service of its kind. Angie's List has always and continues to successfully brand itself as a grass roots, web-based service unaffected and unshaped by influence outside of the opinions and reviews of its members, which is an important and material reason why members pay to join and continue their relationship with Angie's List.  The overwhelming majority of reviews and ratings today are submitted and accessible via the company's website, www.angieslist.com.

23.     Angie's List's currently boasts a membership of over three million paying members.  Angie's List held an initial public offering in November 2011.  The company has since grown every year since its initial beginning.  Angie's List reported $315 million in revenue for fiscal year 2014, up nearly 30% compared to fiscal year 2013.  The company reported $245.6 million in revenue for fiscal year 2013, up 58% compared to fiscal year 2012.

## COMMON FACTUAL ALLEGATIONS

### A.     Angie's List's Relationship With Its Members

24.     Angie's List requires all members to agree to the Membership Agreement, a standardized form contract drafted by Angie's List.

25.     Angie's List's Membership Agreement is not discussed or negotiated with consumers.  Instead, the Membership Agreement is referenced when a consumer signs up to be a member of Angie's List.

26.     The Membership Agreement describes the company's service as follows:

### 1. ANGIE'S LIST SERVICE
Angie's List provides reviews and ratings on a variety of Service Providers based upon the actual first-hand experiences other users have had with

these Service Providers and also provides You with the opportunity to provide Your own reviews and ratings on the Service Providers You use.[8]

27.     Angie's List expressly disclaims any manipulation or control of consumer generated reviews and ratings. The Membership Agreement states in pertinent that:

> **13.   PUBLICATION AND DISTRIBUTION OF CONTENT**
> Angie's List does not guarantee the accuracy, integrity, quality or appropriateness of any Content transmitted to or through the Service. You acknowledge that Angie's List simply acts as a passive conduit and an interactive computer service provider for the publication and distribution of Content . . . .

> **14.   SERVICE PROVIDERS**
>
> Angie's List does not endorse and is not responsible or liable for any Content, Service Provider Content, data, advertising, products, goods or services available or unavailable from, or through, any Service Providers . . . .[9]

28.     As further alleged below, Angie's List does not "simply act[] as a passive conduit" for sharing reviews, ratings, and search result rankings based solely on "actual firsthand experiences of other users."  The company does not disclose that it manipulates search results and rankings to prop-up certain service providers over others on the List, which constitutes a form of paid for endorsement, and active involvement in favoring and promoting the success of certain service providers over others.[10]   Angie's List's undisclosed, pervasive, and self-serving actions violate consumer expectations given its advertisements, and other public statements and representations, and the Membership Agreement.

**B.  How Angie's List Reviews, Ratings, and Searches Are Supposed to Work**

---

[8] *See* Membership Agreement, at 2.

[9] *Id.* at 8-9.

[10] *See, e.g.*, 16 C.F.R. Part 255; ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," FTC (Mar. 2013), *available at* https://www.ftc.gov/sites/default/files/attachments/pressreleases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

29.     Through www.angieslist.com, and other lesser means, Angie's List purportedly aids consumers in finding service providers.  The service providers are reviewed by consumers who have used the service providers in the past.

30.     Angie's List claims to enable consumers to choose a service provider based on other consumers' experiences with the provider.  Consumers value the availability of honest and unfiltered feedback, leading them to pay for the service offered by Angie's List.  Angie's List, unlike similar services that do not charge membership fees, Angie's List prohibits anonymous posts.  Angie's List claims that this makes search results and related content available at Angie's List more reliable than that on unpaid sites.

31.     A review on Angie's List is a narrative description of the service provided to the consumer.  These reviews are either positive or negative.  Accompanying a review is a letter-grade rating from "A" to "F."  There are six areas critiqued: overall experience, price, quality, responsiveness, punctuality, and professionalism.  The category scores are then averaged somehow and totaled across all member reviews for the service provider.  This information determines a service provider's overall rating.

32.     Members of Angie's List can search for the "best service provider."  Angie's List members justifiably and reasonably expect that search results will identify the "best" provider, as the company advertises, based on the member's search values.  According to the FAQ of Angie's List, providers can be shown based on reviews and ratings, or something more objective, like the geographical location:

> **1.  How are companies sorted in search results?**
> A provider's position in your search results is determined by their recent grades and number of reviews. Companies with the best ratings from members will appear first. To help prevent the same providers from always showing up first, companies who have earned similar grades are rotated within your results.[11]

---

[11]  *See* Angie's List FAQ, "Understanding and sorting search results," *at* http://support.angieslist.com/app/answers/detail/a_id/54/~/understanding-and-sorting-searchresults (updated Feb. 1, 2015) (last accessed Dec. 14, 2015).

33.     The FAQ section also reiterates: "Companies with a poor rating from our members will appear lower down on the List after businesses who have earned good ratings for superior work."[12]

### C. How Angie's List Reviews, Rating, and Searches *Really* Work

34.     Consumers, having paid for a consumer-driven list, are not getting "the List" they are promised.  Although Angie's List advertises this consumer-driven experience, it is not available to paying members as advertised.

35.     Angie's List manipulates service providers' placement in search results based on service providers' payments of "advertising" fees.  On information and belief, these fees can be tens and thousands of dollars per service provider.

36.     According to Angie's List's marketing materials directed towards service providers, advertising on Angie's List "exponentially increases [their] exposure to searching members. . . ."   The materials further state that "Businesses that purchase a display advertisement receive about 12 times more profile views from members" on average."  Once a service provider starts to get reviews, certain advertising and promotion options are then unlocked "that give [the service provider] an advantage of increased exposure."

37.     Angie's List markets "Premium options" to advertisers that allow service providers to feature their business with prominent positioning through Web Placement or Keyword Advertising ("Appear on the first page of search results so members can easily find and access your review.") and Call Center Advertising ("Be one of only four companies provided when a member calls looking for a highly-rated provider.").

38.     However, Angie's List misleads and does not reasonably disclose to consumers that service providers pay to improve their company's placement in search results regardless of reviews and ratings.  In addition, on information and belief, for a fee, Angie's List will engage in other deceptive tactics to ensure that service providers who pay

---

[12] *See* Angie's List FAQ,
"Negative            reviews            on            the            List,"            *at*
http://support.angieslist.com/app/answers/detail/a_id/21/~/negative-reviews-on-the-list
(updated Jan. 13, 2014) (last accessed Dec. 14, 2015).

money to Angie's List receive special treatment that ultimately influences search result rankings.

1. **Manipulation of Search Results**

39.    Angie's List does not sort service provider results according to reviews and ratings, as advertised and represented.

40.    Instead, Angie's List ranks service providers' higher in the search results based on whether the provider pays money to Angie's List, and how much providers pay. This information is not disclosed to consumers.

41.    Search result rankings are important because consumers reasonably assume that providers ranked at the top of the list are the highest recommended by other consumers. Consumers, therefore, rarely search past the first few search result pages.

42.    The practical effect is that consumers are duped into choosing service providers ranked highly in search results, even if those providers do not have superior ratings or reviews.

43.    Search result rankings are important because consumers reasonably believe that the higher a service provider is in the ranking, the more highly recommended the service provider is by other Angie's List customers.  The consumer also reasonably believes that the lower the service provider appears in the results, the less reviews and/or ratings that provider has, or the less favorable reviews and/or ratings.

2. **Related Deceptive Conduct**

44.    Angie's List misleadingly guarantees consumers that: "We accept both good and bad reviews and we never remove reviews unless the member who posted the feedback contacts us to delete it."[13]  Yet, Angie's List employs a so-called dispute resolution process by which reviews can be and are removed or rendered not visible to other consumers searching the List.

45.    In addition, on information and belief, for a fee, Angie's List will engage in other deceptive tactics – such as customizing service providers' profiles or obtaining

---

[13]    *See* Angie's List FAQ, "Negative reviews on the List," *at* http://support.angieslist.com/app/answers/detail/a_id/21/~/negative-reviews-on-the-list (updated Jan. 13, 2014) (last accessed Dec. 13, 2015).

favorable ratings and reviews – to ensure that service providers who pay money to Angie's List receive more reviews than others, and more favorable reviews, which ultimately affects search result rankings.

     **D.**  **Plaintiffs' Experience**

**Plaintiff Moore**

46.     Plaintiff Moore first paid to become a member of Angie's List in or about December 2012.  She paid to renew or re-join in each year thereafter, until approximately June 2015.

47.     At the times Plaintiff Moore became a member and renewed her membership (or re-joined), Plaintiff Moore was exposed to Angie's List's marketing statements of a consumer-oriented ethos as described above, including but not limited to the representation that "businesses don't pay."  For example, she has seen multiple television, internet, or print advertisements for Angie's List.  Plaintiff Moore took note that Angie's List provided member-generated content, including member-generated reviews and rankings.  She understood from Angie's List's marketing and advertising that these rankings, reviews, and related content could not be affected or manipulated by the service providers appearing on the List, or by Defendant.  She believed that Angie's List was a forum for unaffiliated people to share their views of various local service providers in an open, candid, and objective way, and that Defendant presented itself as a unique alternative to other on-line offerings where the listed service providers paid to play.

48.     At the time Plaintiff Moore signed up to become a member, and to renew (or to re-join), she had not seen any written content on the Angie's List website or otherwise that contradicted or challenged her understanding of how Angie's List worked.

49.     Plaintiff Moore recalls paying for her membership, and using the List at various times to identify or evaluate service providers.

50.     Both before and after she became a member, Plaintiff Moore, as a reasonable consumer in his position, believed that service providers did not pay Angie's List to advertise in the manner identified herein, such as advertising to secure better placement in search results.

51.     Plaintiff Moore recently learned that Defendant manipulates the List's search results and rankings to prop-up certain service providers over others, a form of paid advertisement, and active involvement in favoring and promoting the success of certain service providers over others.  Had she not been misled as described herein, and had she been truthfully and fairly informed of how the List really works, Plaintiff Moore would not have paid money, or would have paid substantially less money, to join, renew, and/or continue his membership in Angie's List.

**Plaintiff Zygelman**

52.     Plaintiff Zygelman first paid to become a member of Angie's List in or about June 2012.  She paid to renew each membership cycle since she joined.

53.     At the times Plaintiff Zygelman became a member and renewed her membership, Plaintiff Zygelman was exposed to Angie's List's marketing statements of a consumer-oriented ethos as described above, including but not limited to the representation that "businesses don't pay."  For example, she has seen multiple television, internet, or print advertisements for Angie's List.  Plaintiff Zygelman took note that Angie's List provided member-generated content, including member-generated reviews and rankings.   She understood from Angie's List's marketing and advertising that these rankings, reviews, and related content could not be affected or manipulated by the service providers appearing on the List, or by Defendant.   She believed that Angie's List was a forum for unaffiliated people to share their views of various local service providers in an open, candid, and objective way, and that Defendant presented itself as a unique alternative to other on-line offerings where the listed service providers paid to play.

54.     At the time Plaintiff Zygelman signed up to become a member, and to renew, she had not seen any written content on the Angie's List website or otherwise that contradicted or challenged her understanding of how Angie's List worked.

55.     Plaintiff Zygelman recalls paying for her membership, and using the List at various times to identify or evaluate service providers.

56.     Both before and after she became a member, Plaintiff Zygelman, as a reasonable consumer in his position, believed that service providers did not pay Angie's List

-13-

to advertise in the manner identified herein, such as advertising to secure better placement in search results.

57.    Plaintiff Zygelman recently learned that Defendant manipulates the List's search results and rankings to prop-up certain service providers over others, a form of paid advertisement, and active involvement in favoring and promoting the success of certain service providers over others.  Had she not been misled as described herein, and had she been truthfully and fairly informed of how the List really works, Plaintiff Zygelman would not have paid money, or would have paid substantially less money, to join, renew, and/or continue his membership in Angie's List.

**Plaintiff Glick**

58.    Plaintiff Glick first paid to become a member of Angie's List in or about 2012 or 2013.  He paid to renew each membership cycle since he joined.

59.    At the times Plaintiff Glick became a member and renewed his membership, Plaintiff Glick was exposed to Angie's List's marketing statements of a consumer-oriented ethos as described above, including but not limited to the representation that "businesses don't pay."  For example, he has seen multiple television, internet, or print advertisements for Angie's List.  Plaintiff took note that Angie's List provided member-generated content, including member-generated reviews and rankings.  He understood from Angie's List's marketing and advertising that these rankings, reviews, and related content could not be affected or manipulated by the service providers appearing on the List, or by Defendant.  He believed that Angie's List was a forum for unaffiliated people to share their views of various local service providers in an open, candid, and objective way, and that Defendant presented itself as a unique alternative to other on-line offerings where the listed service providers paid to play.

60.    At the time Plaintiff Glick signed up to become a member, and to renew, he had not seen any written content on the Angie's List website or otherwise that contradicted or challenged his understanding of how Angie's List worked.

61.    Plaintiff Glick recalls paying for his membership, and using the List at various times to identify or evaluate service providers.

-14-

62.     Both before and after he became a member, Plaintiff Glick, as a reasonable consumer in his position, believed that service providers did not pay Angie's List to advertise in the manner identified herein, such as advertising to secure better placement in search results.

63.     Plaintiff Glick recently learned that Defendant manipulates the List's search results and rankings to prop-up certain service providers over others, a form of paid advertisement, and active involvement in favoring and promoting the success of certain service providers over others.  Had he not been misled as described herein, and had he been truthfully and fairly informed of how the List really works, Plaintiff Glick would not have paid money, or would have paid substantially less money, to join, renew, and/or continue his membership in Angie's List.

### E.  Angie's List Greatly Benefits From Its Wrongful Conduct

64.     Angie's list has made millions of dollars from unsuspecting consumers by using fraudulent, deceptive, and unfair conduct.  Consumers have no reason to believe, and no reasonable means to discover, that service providers pay to improve their ranking on members' search results.  Consumers paid for a service that provides unfiltered, consumer-driven reviews, and search results, but the consumers are not receiving this service.

65.     Angie's List gets a majority of its revenue from the service providers who pay to have their information shown first and Angie's List is reaping the financial benefit from this scheme.  In 2011, 2012, 2013, and 2014, Angie's List derived 62%, 69%, 73%, and 76.8% of its total revenue, respectively, from service providers.  Stated otherwise, in 2014, Angie's List made approximately $241.9 million from service providers, or more than three times the money it made in consumers' membership fees. Simply put, despite its "consumers first" mantra, Angie's List's economic fortunes are more significantly aligned with service providers than consumers.  The following chart illustrates this[14] [see overleaf]:

---

[14]     Sources:   Angie's   List   2013   Form   10-K   at   3,   *available   at* http://www.sec.gov/Archives/edgar/data/1491778/000119312513074229/d488609d10k.htm; Angie's   List   Fourth   Quarter   Results   and   Full   Year   2014   Results,   *available   at* http://investor.angieslist.com/releasedetail.cfm?ReleaseID=896836.



66.    Despite what Angie's List's claim in the Membership Agreement, it is not acting as a passive conduit for consumers.   Instead, Angie's List actively pursues "advertising" fees from service providers.  In return, Angie's List inflates the search result rankings of those service providers who pay "advertising" fees.  Angie's List tells service providers that the fees will give then an advantage of "increased exposure" that "propel[s] you ahead of your competition."[15]   This is not disclosed to Angie's List consumers, who reasonably believe the list is organized by other consumers' experiences.

67.    Angie's List tells consumers about service providers' opportunities to offer discounts and coupons to members, but does not disclose the advantage of a service provider being able to control their own site ranking based on the "advertising" fees that they pay to Angie's List.

68.    Defendant Angie's List never reasonably disclosed its transformation from a grass roots, consumer-driven, web-based service to a service that accepted, encouraged, and increasingly relied upon (and insisted upon) advertising dollars and inducements from the service providers listed on the site to drive search results and rankings.  Those joining and maintaining their relationship with Angie's List did not know, and reasonably could not have discovered, the true business model of Angie's List given Defendant's continuous and

---

[15]    Angie's     List     Marketing     Guide,     at     8,     available     *at* http://content.angieslist.com/company/images/sp/almarketingguide.pdf.

pervasive marketing and advertising campaign to the contrary, and its Membership Agreement and other materials. Reasonable consumers will remain ignorant of the manner in which Angie's List actually operates until Defendant's true, misleading business model is unmasked.

## CLASS ALLEGATIONS

69.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3). This action satisfies the commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

70.     The proposed classes are defined as:

> All persons in the United States who, within the applicable statute of limitations preceding the filing of this action through class certification, were paying members of Angie's List (the "National Class"); and

> All persons in Pennsylvania who, within the applicable statute of limitations preceding the filing of this action through class certification, were paying members of Angie's List (the "Pennsylvania Subclass").

> All persons in California who, within the applicable statute of limitations preceding the filing of this action through class certification, were paying members of Angie's List (the "California Subclass").

> All persons in New Jersey who, within the applicable statute of limitations preceding the filing of this action through class certification, were paying members of Angie's List (the "New Jersey Subclass").

The National Class and the Pennsylvania, California, and New Jersey Subclass are collectively referred to as the "Classes."

71.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determined whether certification is appropriate.

72.     Excluded from the Classes are Angie's List, its parents, subsidiaries, affiliates, officers and directors, any entity in which Angie's List has a controlling interest, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

-17-

73.     Joinder is impractical because the members of the Classes are so numerous. The Classes consist of many thousands of members each, and the identity of members of the Classes are within the knowledge of and can only be ascertained by resort to Angie's List's Records.

74.     The claims expressed by the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, paid to become and remain members of Angie's List.  The representative Plaintiffs, like all Class members, have been damaged by and lost money due to the misconduct committed by Angie's List because Plaintiffs, like all Class members, subscribed to a service based on the same deceptive, misleading, and/or fraudulent pretenses and practices, and have been subjected to the same or substantially the same identical Membership Agreement, which is a contract of adhesion. The factual basis of the misconduct committed by Angie's List is common to all Class members, and represents a common thread of conduct, that is both unfair and unconscionable, and resulted in injury in fact to the members of the Classes.

75.     There are numerous questions of law and fact applicable to the Classes and those common questions prevail over any questions affecting an individual Class member.

76.     Some of the common questions of law and fact for the Classes are whether Angie's List:

a.     Breached the terms described in the Membership Agreement, and/or the covenant of good faith and fair dealing with the Plaintiffs and other members of the Classes, through the company's manipulation of search results and rankings;

b.     Misrepresented, omitted or concealed that the company manipulates search results;

c.     Unlawfully, falsely, deceptively, or misleadingly misrepresented that the company does not accept money from service providers in connection with search results and rankings;

d.     Unlawfully, falsely, deceptively, or misleadingly induced Class members to pay for membership based on misrepresentations, false promises and omissions;

-18-

e.  To the extent applicable, whether and how long Angie's List fraudulently concealed its past and ongoing wrongful conduct from reasonable consumers including Plaintiffs and the Classes; and

f.  Violated consumer protection laws.

77.     Other questions of law and fact that are common to the Classes include:

a.  The proper method by which to measure restitution and damages; and

b.  The declaratory and injunctive relief to which the Classes are entitled.

78.     Plaintiffs' claims are similar to the claims of the other Class members, because they arise from the same wrongful conduct and the same, or substantially similar, unconscionable provisions of the Angie's List Membership Agreement and/or other related documents.  Plaintiffs suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

79.     Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of the class actions and, in particular, class actions on behalf of consumers.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

80.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Angie's List, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the members of the Classes will continue to suffer losses and Angie's List's misconduct will proceed without remedy.

81.     Even if members of the Classes could individually afford such separate litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would create the possibility for inconsistent and contradictory rulings.  A class action presents far fewer management difficulties, allowing claims to be heard that which might otherwise go unheard because of the relative expense of

brining individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract) (On Behalf of All Classes)**

82.     The allegations set forth in the above paragraphs are incorporated into this section by reference as if set forth verbatim on behalf of the National, Pennsylvania, California, and New Jersey Classes.

83.     Defendant Angie's List has and continues to provide its services pursuant to a standard form Membership Agreement to which it has required all customers to accept and agree as a condition of becoming a paying Angie's List member.  The terms and conditions of this Membership Agreement have not varied significantly or materially during the Class period.

84.     Defendant Angie's List's Membership Agreement is a contract of adhesion. Defendant has and continues to require that all customers agree to all terms and conditions of this form Agreement authored solely and exclusively by Defendant which is presented on a take-it-or-leave-it basis as a condition of membership.

85.     Defendant's Membership Agreement contains the following express terms:

### 13.     PUBLICATION AND DISTRIBUTION OF CONTENT

Angie's List does not guarantee the accuracy, integrity, quality or appropriateness of any Content transmitted to or through the Service. You acknowledge that Angie's List simply acts as a passive conduit and an interactive computer service provider for the publication and distribution of Content . . . .

### 14.     SERVICE PROVIDERS

Angie's List does not endorse and is not responsible or liable for any Content, Service Provider Content . . . .

86.     These provisions clearly and unambiguously reflect that Defendant Angie's List will act as a provider rating and ranking system based on "first-hand" consumer reviews, unaffected and unshaped by input from any other source, including Defendant.

-20-

87.     In fact, Defendant Angie's List does not "simply act[] as a passive conduit" for sharing reviews, ratings, and search result rankings based solely on "actual first-hand experiences of other users."   As alleged herein, Defendant manipulates search results and rankings to prop-up certain service providers over others on the List, which actions constitute a form of paid-for endorsement, and active involvement in favoring and promoting the success of certain service providers over others.   These actions constitute a material, continuous breach of the Membership Agreement.

88.     Every contract imposes on the parties a duty of good faith and fair dealings. This duty requires that neither party will do anything to injure the right of the other to enjoy the benefits of the agreement.   It imposes on each party the obligation to do everything the contract presupposes they will do to accomplish its purpose, to make effective the agreement's promises in accordance with the spirit of the parties' bargain.   Here, in transforming Angie's List into a pay-to-play service dependent and reliant upon the substantial revenue derived from service providers who are willing to pay Angie's List, *inter alia*, to appear higher in search results delivered by Defendant to its consumer members, without disclosing or altering the terms of its bargain with its members to reflect its actual performance, Defendant violated this implied covenant.

89.     Plaintiffs and the Classes have performed in accordance with the terms of the Membership Agreement except and to the extent performance has been excused, or rendered impracticable or impossible.

90.     As a direct and proximate result of Defendant Angie's List's material breach of contract, Plaintiffs and the Classes have and continue to suffer direct and consequential damages.   Plaintiffs and the Classes did not receive the benefit of their bargain—a true provider rating system different than other free to consumer web-based services, that is, one reliant on "first hand" consumer reviews unaffected and unshaped by input from any other source, including the service operator.

## SECOND CLAIM FOR RELIEF
### (Fraud and Fraudulent Inducement) (On Behalf of All Classes)

91.     The allegations set forth in the above paragraphs are incorporated into this section by reference as if set forth verbatim on behalf of the National, Pennsylvania, California, and New Jersey Classes.

92.     Angie's List affirmatively misrepresented and/or did not disclose sufficient facts to render non-misleading its statements about, inter alia:

      a.   Whether the company "endorse[s]" service providers;

      b.   Whether service providers pay Angie's List to manipulate consumer reviews, ratings, and search results; and

      c.   Whether the company acts as a "passive conduit."

93.     Angie's List knew, or reasonably should have known, that its representations alleged herein were materially false or misleading, or that omission of material facts rendered such representations false or misleading.  Angie's List also knew, or had reason to know, that its misrepresentations and omissions would induce Class members to pay to join Angie's List.

94.     Angie's List's misrepresentations or omissions were material and a substantial factor in Plaintiffs' and Class members' paying to become members of Angie's List.

95.     Angie's List intended its misrepresentations or omissions to induce Plaintiffs and Class members to pay to become (or to remain) members of Angie's List, or had reckless disregard for same.

96.     But for these misrepresentations (or omissions), Plaintiff and Class members would not have joined and/or paid for, or paid as much for joining, Angie's List.

97.     Plaintiffs and Class members were justified in relying on Angie's List's misrepresentations.   The same or substantively identical misrepresentations were communicated, and/or the same or substantively identical omissions were not communicated, to each Class member, including through a standardized purchasing process.

98.     Plaintiffs and Class members were damaged by reason of Angie's List's misrepresentations or omissions alleged herein.

-22-

## THIRD CLAIM FOR RELIEF

**(Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*) (On Behalf of the Pennsylvania Subclass)**

99.     The allegations set forth in the above paragraphs are incorporated into this section by reference as if set forth verbatim on behalf of the Pennsylvania Subclass.

100.     This claim is asserted on behalf of the members of the Pennsylvania Subclass under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*

101.     The UTPCPL, 73 P.S. § 201-3 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

102.     Angie's List has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce by:

> a.  "Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services," *see* 73 P.S. § 201-2(4)(ii);
>
> b.  "Using deceptive representations . . . in connection with goods or services," *see* 73 P.S. § 201-2(4)(iv);
>
> c.  "Representing that goods or services have sponsorship [or] approval . . . that they do not have . . . .," *see* 73 P.S. § 201-2(4)(v);
>
> d.  "Advertising goods or services with intent not to sell them as advertised," *see* 73 P.S. § 201-2(4)(ix);
>
> e.  "Failing to comply with the terms of any written guarantee . . . ," *see* 73 P.S. § 201-2(4)(xiv); and
>
> f.  "Engaging in any other fraudulent or deceptive conduct which creates a likelihood or confusion or of misunderstanding," *see* 73 P.S. § 201-2(4)(xxi).

103.     Angie's List violated the above sections by engaging in the conduct alleged herein.

104.    Pursuant to 73 P.S. § 201-9.2, *et seq.*, Plaintiff Moore and members of the Pennsylvania Subclass purchased services, in the form of, inter alia, membership access to reviews, ratings, and search results from Angie's List that were used primarily for personal, family or household purposes.

105.    Angie's List engaged in unlawful conduct, made affirmative misrepresentations or omissions, or otherwise violated the UTPCPL by, inter alia, knowingly, intentionally, and recklessly misleading consumers about Angie's List's manipulation of reviews, ratings, and search results, which also violates the Membership Agreement.

106.    To the extent applicable, Angie's List intended that Plaintiff Moore and Pennsylvania Subclass members would rely on the company's misrepresentations, or acts of concealment and omissions, including those in connection with the Membership Agreement. Further, to the extent applicable, reliance can be presumed under the circumstances.

107.    Angie's List's conduct caused Plaintiff Moore and Pennsylvania Subclass members to suffer ascertainable losses in the form of membership fees paid in amounts that would otherwise not have been incurred in whole or in part.

108.    A causal relationship exists between Angie's List's unlawful conduct and the ascertainable losses suffered by Plaintiff Moore and the Pennsylvania Subclass.

109.    As redress for Angie's List's repeated and ongoing violations of the UTPCPL, Plaintiff Moore and the Pennsylvania Subclass are entitled to, inter alia, damages and declaratory relief.

### FOURTH CLAIM FOR RELIEF
**(California Business & Professions Code § 17200, *et seq.*) (On Behalf of the California Subclass)**

110.    The allegations set forth in the above paragraphs are incorporated into this section by reference as if set forth verbatim on behalf of the California Subclass.

111.    California Business & Professions Code section 17200 precludes unfair competition, *i.e.,* the employment of any unlawful, unfair or fraudulent business acts or practices; and any  unfair, deceptive, untrue or misleading advertising violating Cal. Bus. &

Prof. Code section 7500. This prohibition extends to any act, statement, omission or conduct or pattern of activity engaged in within California which affects the rights of consumers within the State of California and elsewhere.

112.    For years, Defendant Angie's List has engaged in a continuous, unwavering and pervasive marketing and advertising campaign designed and intended to distinguish itself from other internet service providers such as Yellow Pages and Yelp by successfully branding itself as a "passive conduit" of consumer-driven content in which local businesses vie for the business of local  citizens through actual Angie's List customer reviews without the ability to pay to play. Angie's  List has maintained this branding as it transformed to a public company which has derived an increasing and significant proportion of its revenues from the businesses who vie for California Class Members business on the List. In truth, businesses do pay Angie's List significant advertising and other fees in order to affect and influence the List including search results and result rankings. Without changing or altering its marketing and advertising strategy, or otherwise reasonably informing its customers, Angie's List has evolved over the last several years into a  company which derives the majority, now in excess of 75%, of its revenue from the businesses who, with Angie's List assistance, solicit for business on the List.

113.    Defendant Angie's List's conduct is fraudulent within the meaning of the UCL given Plaintiff Zygelman and reasonable consumers are likely to be misled about the service allegedly being offered by Angie's List. The intended and actual result of Angie's List's pervasive advertising and marketing campaign, and customer agreements and materials, as described above, is to mislead reasonable consumers such that they understand and reasonably believe that the List is a passive conduit of consumer-driven information unaffected and not influenced by what businesses are willing to pay to be on and part of the List. The reasonable consumer would and did attach importance to this reasonable understanding in making the decision to pay to become and stay a paying Angie's List member, and such understanding played a substantial and material part in that decision.

114.    Defendant Angie's List's conduct is unlawful within the meaning of the UCL in that Defendant has and continues to violate Cal. Civil Code section 1750, *et seq.*

(hereinafter "CLRA") given Defendant's continuous, unwavering and pervasive marketing and advertising campaign was likely to mislead consumers that Defendant's service: (a) had characteristics, uses or benefits that it did not in violation of Section 1770(a)(5) of the CLRA; and (b) were of a particular standard, quality or grade when they were of another in violation of 1770(a)(7) of the CLRA.

115.    Defendant Angie's List's conduct is unfair within the meaning of the UCL in that the alleged consumer injury is substantial, creating an unreasonable cost to consumers who are likely to be misled into paying for service which is not, as represented, of value given it is not materially different or distinct from other free services seeking to compete with Defendant. There is no countervailing benefit to Defendant conducting itself in the wrongful manner herein alleged.

116.    Were it not for the unfair competition of Defendant Angie's List, Plaintiff Zygelman and the California Subclass would not have paid the contracted or any amount to become and stay paying members of Defendant's service.

117.    Plaintiff Zygelman and the California Subclass have and will continue to suffer injury in fact and lose money as a direct result of Defendant's unfair competition in that each has expended money to become and/or stay a Angie's List member under what amounts to fraudulent and misleading pretense. They will continue to suffer injury within the meaning of the UCL until reasonably informed of the truth about Angie's List and how, contrary to its pervasive marketing and advertising campaign, and customer agreements and materials, businesses on the List pay to play and influence customers' choices in who they hire.

118.    As a result of Defendant's unfair competition, the California Subclass, including Plaintiff Zygelman, are entitled to appropriate equitable relief including declaratory and injunctive relief, and restitution (including fluid recovery when certified as a Class action). Plaintiff Zygelman and the California Subclass are also entitled to recover costs, expenses and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**(California Consumer Legal Remedies Act, California Civil Code Section 1750,** *et seq.***)**
**(On Behalf of the California Subclass)**

119.   The allegations set forth in the above paragraphs are incorporated into this section by reference as if set forth verbatim on behalf of the California Subclass.

120.   California Civil Code Section 1750, *et seq.,* precludes Defendant Angie's List from representing that its service has characteristics and benefits which it does not have or were of a particular standard, quality or grade when they were of another in transactions which are intended to result, or which have resulted, in consumers paying to become and to main membership in Angie's List.

121.   In engaging in the conduct described herein, as more specifically set forth above, Defendant Angie's List violated California's 23 Consumer Legal Remedies Act ("CLRA") including Civil Code section 1770(a)(5) and (a)(7), engaging in conduct likely to and, in fact, misleading Plaintiff Zygelman and the California Subclass.

122.   Were it not for the misconduct of Defendant, Plaintiff Zygelman and the California Subclass would not have paid the contracted or any price to become and/or stay Angie's List customers.

123.   The California Subclass, including Plaintiff Zygelman, has and will continue to suffer injury in fact and damages as a direct result of Defendant's CLRA violations in that each has expended money to become and/or stay Angie's List members under what amounts to fraudulent and misleading pretense. This Subclass will continue to suffer injury and damages within the meaning of the CLRA until reasonably informed of the truth about Angie's List and how, contrary to its pervasive marketing and advertising campaign, and customer agreements and materials, businesses listed on the List pay to play and influence customers' choices in who they hire.

124.   Plaintiff Zygelamn and the Classes have given notice to Defendant Angie's List under and in  accordance with Cal. Civil Code section 1782 on January 15, 2016, via certified mail, return receipt requested. Plaintiff Zygelman and the California Subclass will amend this Complaint to state a claim for damages, including punitive damages, in the event this statutory notice expires without Defendant taking all remedial actions demanded by

-27-

Plaintiff Zygelman and the Classes in that notice.

125.    As a result of Defendant's CLRA violations, Plaintiff Zygelman and the California Subclass are entitled to declaratory and injunctive relief, and an award of costs, expenses and attorneys' fees.

### SIXTH CLAIM FOR RELIEF
### (New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, et seq.)

126.    The allegations set forth in the above paragraphs are incorporated into this section by reference as if set forth verbatim on behalf of the New Jersey Subclass.

127.    Plaintiff Glick and New Jersey Subclass members are "persons" within the meaning of N.J.S.A. 56:8-1(d).

128.    Defendant is a "person" or "entity" as used in the NJCFA.

129.    Defendant's conduct alleged herein relating to memberships constitutes a "sale" within the meaning of N.J.S.A. 56:8-1(e).

130.    NJCFA declares unlawful:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]

N.J.S.A. 56:8-2.

131.    Defendant's deceptive, fraudulent and/or unfair practices, as described herein, offend established public policy, are unconscionable, and caused ascertainable losses to consumers, including Plaintiff Glick and the New Jersey Subclass.

132.    For instance, for many years, Defendant Angie's List has engaged in a continuous, unwavering and pervasive marketing and advertising campaign designed and intended to distinguish itself from other internet service providers such as Yellow Pages and Yelp by successfully branding itself as a "passive conduit" of consumer-driven content in which local businesses vie for the business of local citizens through actual Angie's List

customer reviews without the ability to pay to play.  Angie's List has not wavered from but rather maintained this branding as it transformed to a public company which has derived an increasing and significant proportion of its revenues from the businesses who vie for New Jersey Subclass Member business on the "List."

133.    In truth, businesses do pay Angie's List significant advertising and other fees in order to affect and influence the "List" including search results and result rankings. Without changing or altering its marketing and advertising strategy, or otherwise reasonably informing its customers, Angie's List has evolved over the last several years into a company which derives the majority, now in excess of 75%, of its revenue from the businesses who, with Angie's List assistance solicit for business on the "List."

134.    Defendant Angie's List conduct described herein is deceptive, fraudulent, and/or unfair within the meaning of the NJCFA given (to the extent applicable) Plaintiff and the reasonable consumer are likely to be misled about the service allegedly being offered by Angie's List.  The intended and actual result of Angie's List's pervasive advertising and marketing campaign, and customer agreements and materials, as more particularly set forth above , is to mislead reasonable consumers such that they understand and reasonably believe that the "List" is a passive conduit of consumer-driven information unaffected and not influenced by what businesses are willing to pay to be on and part of the "List."  The reasonable consumer would and did attach importance to this reasonable understanding in making the decision to pay to become and stay a paying Angie's List member, and such understanding played a substantial and material part in that decision.

135.    In addition, violations of Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) constitute unfair, unconscionable, and/or deceptive acts or practices in violation of NJCFA.  Defendant's conduct described herein also constitutes a violation of Section 5(a)(1) and, accordingly, the NJCFA.

136.    Angie's List engaged in unlawful conduct, made affirmative misrepresentations or omissions, or otherwise violated the NJCFA by, inter alia, knowingly, intentionally, recklessly and/or negligently misleading consumers about Angie's List's manipulation of reviews, ratings, and search results, which also violates the Membership

Agreement.

137.    To the extent applicable, Angie's List intended that Plaintiff Glick and New Jersey Subclass members would rely on the company's misrepresentations, or acts of concealment and omissions, including those in connection with the Membership Agreement. Further, to the extent applicable, reliance can be presumed under the circumstances.

138.    A direct and causal relationship exists between Defendant's wrongful conduct and the ascertainable losses suffered by Plaintiff Glick and the New Jersey Subclass.

139.    As a direct and proximate result of Defendants' wrongful practices (which violate NJCFA), Plaintiff Glick and the New Jersey Subclass have suffered ascertainable losses in the form of membership fees paid in amounts that would otherwise not have been incurred in whole or in part, which constitutes a loss of money and actual damages.

140.    In addition to actual damages, Plaintiff Glick and the New Jersey Subclass are entitled to treble damages, declaratory and injunctive relief, as well as reasonable attorney's fees and costs pursuant to N.J.S.A. 56:8-19.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.    Declaring that Angie's List breached its Membership Agreement with Plaintiffs and the National Class members;

2.    Declaring that the Membership Agreement is void, severable, and/or unconscionable to the extent necessary to remedy Angie's List's past and continuing wrongful conduct;

3.    Declaring Angie's List's conduct alleged herein to be wrongful, unfair, inequitable, and unconscionable;

4.    Restitution of membership fees paid to Angie's List by Plaintiffs and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

5.      Disgorgement of the ill-gotten gains derived by Angie's List from its misconduct;

6.      Actual damages in an amount according to proof;

7.      A temporary and permanent injunction prohibiting Angie's List from enforcing the void, severable, and/or unconscionable provisions of the Membership Agreement, and enjoining Angie's List from engaging in the same wrongful conduct going forward including requiring Angie's List to adequately disclose facts to render truthful its representations about reviews, ratings, and search results as alleged herein;

8.      Punitive and exemplary damages;

9.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

10.     Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees; and

11.     Such other relief as this Court deems just and proper.

**Dated:  June 24, 2016**                          Respectfully submitted,

                                        *    /s/ DJS8892*
                                        Richard M. Golomb, Esquire
                                        Ruben Honik, Esquire
                                        Kenneth J. Grunfeld, Esquire
                                        David J. Stanoch, Esquire
                                        **GOLOMB & HONIK, P.C.**
                                        1515 Market Street, Suite 1100
                                        Philadelphia, PA 19102
                                        Phone: (215) 985-9177
                                        Fax:    (215) 985-4169
                                        Email: rgolomb@golombhonik.com
                                                rhonik@golombhonik.com
                                                kgrunfeld@golombhonik.com
                                                dstanoch@golombhonik.com

                        *Attorneys for Plaintiffs and the Class*